(83 South. 776)

No. 22091.

MARTIN et al. v. STERKX.

(Feb. 2, 1920.)

*(Syllabus by the Court.)*

1. RELEASE ⬅29(2) — ABANDONMENT OF CLAIM EX DELICTO AGAINST ONE OF TWO JOINT TORT-FEASORS SUED IN SOLIDO DOES NOT DISCHARGE THE OTHER.

Where, in an action ex delicto, plaintiff demands judgment against two persons in solido, but upon the trial becomes satisfied that one of them is not liable, and after verdict enters a remittitur and dismisses the suit as to such person, the abandonment of the claim does not operate to discharge the other defendant within the meaning of Civ. Code, art. 2203.

2. LANDLORD AND TENANT ⬅19—OWNER MAY RECOVER DAMAGES AGAINST A MEDDLER WHOSE ACTS CAUSE OWNER NOT TO RECEIVE CROPS AGREED AS RENTAL

Where a third person attempts officiously and mischievously to dispossess the tenant of another, denying the title of the lessor and creating doubts in the minds of the tenant and the negro subtenants on a plantation, as to whether, in view of pending or threatened litigation, they will be allowed to realize anything from improvements or labor expended, with a resulting demoralization, failure to make crops, and failure of the owner to receive the share agreed on as rental, such owner is entitled to recover in an action in damages.

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Jas. Andrew, Judge.

Action by Mrs. Florida C. Martin and others against Mrs. Mamie S. Sterkx and husband. Judgment for plaintiffs against defendant Mrs. Mamie Sterkx, dismissing as to her husband after a remittitur, and defendant Mrs. Mamie Sterkx appeals. Affirmed.

Blackman, Overton & Dawkins, of Alexandria, for appellant.

White, Holloman & White, of Alexandria, for appellees.

Statement of the Case.

MONROE, C. J. Defendant Mrs. Mamie Sterkx prosecutes this appeal from a judgment awarding plaintiff $350 as damages alleged to have been sustained by reason of certain of defendant's acts and doings. The cause of action as originally set forth in the petition was in substance as follows:

(1) That Mrs. Sterkx and her husband are indebted to petitioner in the sum of $20,000, for this, to wit, (2) that they have maliciously fomented suits against, and have conspired with others to vex and annoy, her;

(3) that Mrs. Sterkx, aided by her husband, went upon petitioner's property, ordered her tenants off, and assumed to take possession thereof, to petitioner's great loss and injury; (4) that, by reason of the aforesaid acts of the said Mrs. Mamie Sterkx and her husband, Joseph Sterkx, and other acts of the same nature, which will be shown on the trial hereof, petitioner has suffered loss, etc.

On the trial of the case evidence in support of the allegations of paragraph 2 of the petition was excluded, on the ground that the allegations were too vague and general to admit of proof, and plaintiff abandoned any claim based thereon. As the result of the trial the jury (which the judge had ordered ex propria motu) brought in a verdict for plaintiff in the sum of $350 "for actual loss of rent," and thereupon motions for new trials were filed on behalf of both defendants, and the motion for Mrs. Sterkx was overruled. But, in view of the withdrawal of the claim asserted in paragraph 2 of the petition and of the fact that, after the finding of the verdict, plaintiff had entered a remittitur and dismissed the suit as to Joseph Sterkx, the court gave judgment only against Mrs. Sterkx, further decreeing:

"That there be judgment in favor of defendant Joseph Sterkx, * * * remitting the amount of the verdict * * * as to the said defendant, * * * and dismissing this suit as to him."

We gather from the evidence that plaintiff had acquired, by purchase from her aunt, Mrs. Caroline Compton, a small farm, known as the "Martin Compton place," with the understanding that Martin Compton, the then occupant, would move out within 30 days after April 30, 1915 (or possibly that understanding was based upon some action in court, as there appears to have been litigation about plaintiff's title, and the evidence is obscure upon that point), and that it was subsequently agreed that Compton should move, and in fact did move, out on May 13th, which was followed by the moving in of a Mr. Neal, plaintiff's subtenant, on the next day, May 14th, at which time the incident occurred which in the main provoked this suit, and which was as follows: Mrs. Compton was nearly 90 years of age, and evidently rather helpless, mentally and physically. She had been staying temporarily at the residence of defendant, who is her niece and plaintiff's sister, and within a week or two prior to the date upon which Martin Compton was to vacate the place bearing his name she had been induced to bring a suit against plaintiff with reference to the latter's title, the precise nature of which is not disclosed, but which it is not suggested would have prevented plaintiff from going into possession. Plaintiff had in the meanwhile found a tenant for the property in the person of Miss Sallie Parrott, who, together with Mr. L. C. Tubre, as her partner and overseer, had undertaken to cultivate it and make certain improvements in the way of fencing and repairs to some of the cabins, and who on May 14th was installing Mr. Neal in the house that Mr. Compton had vacated. That being the situation Mrs. Sterkx took her aunt and her son (a young man) in an automobile from her home in Alexandria to the Martin Compton Place, passing the cabin from which Neal was moving on the way. She says in her testimony:

"When I passed that cabin that Mr. Neal was living in, and saw them loading the wagon, I said to Mrs. Compton, 'I think they may be moving in your house; I see them loading the wagon, and they may be moving to your house.' So, when I got there, I took the things out of the auto and put them on the back gallery. Mrs. Neal met me and spoke to me, and said she had moved in. 'Well,' Mrs. Compton said, 'my lawyer told me' (interrupted)."

Miss Parrott testifies that Mr. Neal sent his little girl after her and as follows:

"When I got over there—I had never met Mrs. Sterkx and they were on the back porch talk-

ing—and she got up and introduced herself to me and she said, 'Martin Compton has moved off here, and the lawyer says that the property belongs to Mrs. Compton, and she has come back to take possession of her property.' I said, 'Well, what authority have you?' And she said, 'Well, the lawyer told her she (meaning probably the plaintiff) could not take the property away from her, and she (meaning Mrs. Compton) has come back to take possession.' I told her, 'I can't possibly turn it over, because Mrs. Martin has put me in possession of it, and I am responsible to her until it is released.' And she said, 'Mrs. Martin couldn't put you in possession of it, because, you know, Miss Parrott, she couldn't put you in possession of something she didn't own.' I said, 'Well, Mrs. Sterkx, Mrs. Martin was put in possession by the court, and I am responsible to her until I am released.' "

There was then some suggestion by Mrs. Sterkx's son to Martin Compton, who appears on the scene, that he move his furniture back into the house, followed by the statement:

"We will move them in here this night, before 12 o'clock, whether you say so or not."

And Mrs. Sterkx said:

"Martin's time is not out; he was not to give possession until the 15th."

To which the witness answered:

"I said, 'If they are put in to-night, I can throw them out in the morning.' And I said to Mrs. Sterkx, 'If you come here to bulldoze me, you have certainly struck the wrong place.' I said, 'I have never been in a lawsuit.' "

There was some further talk about her pending lawsuit, to the effect that it would probably be disposed of by the 20th of the month, and Miss Parrott finally said:

"If Mrs. Compton wants a feather bed to stay here until this suit is settled, I have one there, or you can leave hers, but you cannot bring any furniture back into the house."

And the matter of Mrs. Compton's accommodation was arranged in that way, and she stayed in the Neal house as a boarder for about two weeks, at the end of which period she was removed by plaintiff to her house in Alexandria. When the case was tried, she testified that she did not know that she was authorizing the suit against the Martins, and would not willingly have sued them, though she was willing to try to recover the property. The evidence shows that the effect of defendant's incursion was demoralizing to plaintiff's tenant and subtenants. The news was spread abroad that the place was in litigation, and Miss Parrott did not feel safe in making the improvements agreed on and did not know what to tell her negro tenants about their crops, and considerable valuable time was irretrievably lost.

### Opinion.

[1] Defendant's counsel argue that, as plaintiff demanded judgment against Mr. and Mrs. Sterkx in solido, her remission of her claim against Mr. Sterkx discharged Mrs. Sterkx, according to C. C. 2203, which would no doubt be true if Mr. and Mrs. Sterkx had been indebted in solido to plaintiff, whether ex contractu or ex delicto. But plaintiff did not remit any debt due by Mr. Sterkx. She abandoned her claim against him because she found that he was not her debtor, and C. C. 2203, does not apply to such a case. Hall v. Allen Mfg. Co., 133 La. 1079, 63 South. 591.

[2] On the merits of the case our reading of the testimony fails to satisfy us that the jury erred in assessing the damages. Defendant's interference is shown to have been officious and mischievous. It created doubts in the minds of plaintiff's tenant, Miss Parrott, and her negro subtenants, as to whether they would be allowed to realize anything from improvements or labor expended on the property, with the result that the crops produced were so meager that plaintiff, who was to receive a one-fourth share, received nothing.

The judgment appealed from is therefore affirmed.