O’NIELL, Chief Justice.
 

 The plaintiff is appealing from a judgment dismissing her suit on an exception of no cause or right of action. The suit is for damages for an alleged breach of contract by a third party, Mrs. Concldin C. Barry. The plaintiff avers that an employee of the defendant, Item Company, acting within the scope of his employment, induced Mrs. Barry to breach the contract. And for that Mrs. Cust is demanding of the Item Company $5,646 damages.
 

 The right of action of course depends upon the following facts recited in Mrs. Cust’s petition. She resides in Danville, Virginia. In January 1939, she organized in New Orleans an enterprise called the Hospitality and Service Bureau, the business of which was the bringing of customers to the bureau’s clients or patrons from among the newcomers in the city. Mrs. Cust avers that the business commenced operating' on March 1, 1939, under a written contract with Mrs. Barry, as follows:
 

 “In opening the Hospitality and Service Bureau of New Orleans, La., the two of us, Mrs. Lucie P. Cust and Mrs. Concklin C. Barry, agree to. give each other one month notice in case either of us wishes to sever connection with the other one.
 

 “We also agree to share equally the expenses, and the profits of the business; to divide equally the profit after expenses have been deducted.
 

 
 *520
 
 “Since Mrs. Cust created and developed the project, and is sharing it equally with a partner, we both agree that she have protection, in this way, for a period of three years after connection is severed, that a partner agrees not to enter into any business similar to that taught her by Mrs. Cust. This is to avoid competition.
 

 “(Signed) Lucie P. Cust
 

 “(Signed) Concklin C. Barry
 

 “Date of opening: March 1st, 1939.”
 

 Mrs. Cust avers that Mrs. Barry had no previous knowledge of the hospitality and service business, and that she, Mrs. Cust, came to New Orleans and for a period of about two months immediately preceding March 1, 1939, trained and instructed Mrs. Barry in the manner of conducting the business, giving her the trade secrets and the benefit of Mrs. Cust’s knowledge and experience with which, as she says, she had conducted such a business successfully for several years. She avers that for some time before February 1, 1940, and during all of February and March, Mrs. Barry contacted the patrons and prospects of the bureau and induced them to transfer their business to a similar enterprise to be organized by the Item Company; that on some of these occasions Mrs. Barry was accompanied by an employee of the Item Company, acting within the scope of his authority, and that these inducements, by Mrs. Barry either alone or in company with the agent or agents of the Item Company, were made with the knowledge and consent of the Item Company and as the result of a conspiracy between' the Item Company and Mrs. Barry to establish a competing business and obtain the plaintiff’s patrons or clients for the contemplated new enterprise. The plaintiff avers that Mrs. Barry notified her on or about February 1, 1940, that at the end of the month she would sever her business connection with the plaintiff; that thereafter Mrs. Barry continued her solicitations for the Item Company, and at a subsequent date was employed by the company in its hospitality and service department. Mrs. Cust avers that she is informed that an employee of the Item Company brought Mrs. Barry to another employee of the company and proposed that Mrs. Barry should be employed by the company to establish a hospitality service department for the Item Company, like that which she, Mrs. Cust, had organized. She avers that at a date unknown to her and on terms and conditions impossible to ascertain, but while Mrs. Barry was under contract with her, Mrs. Barry solicited the patrons and clients of Mrs. Cust on behalf of the Item Company, being sometimes accompanied by an employee of- the Item Company; and that subsequently the Item Company established and conducted a hospitality service department and employed Mrs. Barry there, on a basis unknown to Mrs. Cust. She avers that the Item Company had full knowledge of the terms and conditions of the written agreement between her and Mrs. Barry, and, in the alternative, that, if the Item Company did not have knowledge of Mrs. Barry’s contract with the plaintiff, the company ratified the acts of its agents by establishing and operating the competitive business. Mrs. Cust names six New
 
 *522
 
 Orleans merchants who, she alleges, were induced by employees of the Item Company, with the aid of Mrs. Barry, to discontinue patronizing Mrs. Cust’s firm’s Hospitality and Service Bureau, and to transfer their business or patronage to the Item Company; and that, but for this interference by the Item Company and Mrs. Barry, these patrons would have continued patronizing the plaintiff’s bureau “for at least two years”. Mrs. Cust avers that four of the six patrons whom she names had been paying her firm $20 per month each, that one of them had been paying $15 per month and that the other had been paying $10 per month, making a total of $105 per month; that the contracts with these patrons were for a definite period; that, at their termination the patrons continued to accept the services; and that, but for the acts of the Item Company and Mrs. Barry, “these clients would have continued as such for at least two years.” For that the plaintiff claims 24 times $105, or $2,520 damages. In addition, she claims that she suffered damages by being compelled, by the acts which she complains of, to return to New Orleans from her home in Danville, Virginia, and to remain in New Orleans four and a half months in order to revive and rearrange the Hospitality and Service Bureau, and to train a substitute to take the place of Mrs. Barry; all of which, she avers, caused her to incur traveling expenses to the extent of $76, and living expenses in New Orleans to the amount of $450. And she avers that all of this caused her to become ill and to suffer “a complete nervous and physical collapse”, necessitating her being confined in a hospital in New Orleans for five days, at a cost of $35, and to require medical treatment afterwards at her home in Danville, Virginia, for several weeks, with a kidney ailment; all of which she says is attributable directly to the excess of work, worry and anxiety in the matter of reviving and rearranging the Hospitality & Service Bureau; and for that she claims $50 for medical expenses, $35 for hospital bills, $15 for medicines, and $2,500 for mental pain and suffering, for time expended, and for the strain and anxiety, “caused by the necessity of reviving her business and training a new partner”.
 

 The several items of damages claimed by the plaintiff resulted from causes which we consider too remote from the alleged inducing of Mrs. Barry to breach her contract. The only loss that is said to have resulted directly from the alleged breach of contract is the alleged loss of the six customers whose patronage is said to have been worth $105 per month. Even as to these damages there is no fact alleged that would justify the plaintiff’s conclusion that the six customers would have continued patronizing her for two years, or for any definite period, if Mrs. Barry had not breached her contract. All of the other items of damage would be too remote to justify a recovery by the plaintiff, even if the law of Louisiana permitted a party to a contract to recover damages from a third party for his inducing the other party to breach the contract. But it is now well settled that one who is not a party to a contract is not liable in damages to one of the parties to the contract for inducing the other party
 
 *524
 
 to breach the contract. Kline v. Eubanks, 109 La. 241, 33 So. 211; B. J. Wolf & Sons v. New Orleans Tailor-Made Pants Co., 113 La. 388, 37 So. 2, 67 L.R.A. 65; Moulin v. Monteleone, 165 La. 169, 115 So. 447; Hartman v. Greene, 193 La. 234, 190 So. 390; Cooley on Torts, 2d Ed., 581.
 

 The plaintiff cites and relies upon article 2324 of the Civil Code, which declares that he who causes another to do an unlawful act — meaning a tort — or who assists or encourages him in the commission of it — is answerable in solido with him for the damages caused thereby. That means merely that one who causes another to commit a tort, or who assists or encourages him in the commission of the tort, is himself a tort feasor ánd is therefore liable in solido with the one who actually commits the tort. The attorneys for the plaintiff in this case, in their brief, cite two such cases, namely Bordelon v. Linzay, 2 La.App. 329, and Carson v. Stephens, 14 La.App. 272, 129 So. 381, decided by the Court of Appeal. But it is not contended by counsel for the plaintiff in this case that the defendant committed a tort, or did anything more than to induce Mrs. Barry to violate her contract.
 

 Mrs. Cust alleges that the acts which caused her to lose the six customers whom she names were committed prior to the first day of February and during all of 'February and March. Those items of damages are the only items that might be so directly the result of the alleged breach of contract as ,to be recoverable if in fact the Item Company is answerable for any damages. But the plaintiff does not allege — perhaps because it is impossible to prove — how much of this alleged loss resulted from acts committed before and how much resulted from acts committed after the end of February. The plaintiff admits in her petition that Mrs. Barry gave her notice on February 1, 1940, that she would terminate the contract at the end of the month. The contract provided that either party had the right to sever her business connection with the other at any time by giving one month’s notice. Therefore, Mrs. Barry was at liberty to deal with the Item Company as she saw fit to deal after the end of February, 1940. We say this notwithstanding the cause which purported to allow Mrs. Cust to terminate the contract and thereby deprive Mrs. Barry of the right to engage in a similar business for three years, by merely giving Mrs, Barry one month’s notice, and which, at the same time, prevented Mrs. Barry from withdrawing from the contract without thereby depriving herself of the right to engage in a similar business for a period of three years. The contention made in the brief of the plaintiff in this suit, that the Item Company induced Mrs. Barry to violate her contract, is founded mainly upon this clause in the contract, purporting to forbid Mrs. Barry to engage in any such business at any time during a period of three years after the termination of the contract. But our opinion is that that clause in the contract is contrary to public policy and therefore null. It was so held with' regard to a similar clause in a contract of employment in the case of Blanchard v. Haber, 166 La.
 
 *526
 
 1014, 118 So. 117. The public policy which was expressed in that decision was embodied in Act No. 133 of 1934, which declares that it shall be against public policy for a contract of employment to have a clause forbidding the employee to engage in any competing business at the termination of the contract, and that any such clause shall be null. The contract containing such a clause in this case purports to be a co-partnership agreement,- but public policy forbids such a clause as well in such a contract as we have here as in a contract of employment. Under the doctrine of Blanchard v. Haber it is inconceivable that Mrs. Cust should have been at liberty to terminate the contract at any time to the prejudice of Mrs. Barry, by merely giving her a month’s notice, and that Mrs. Barry was bound to abstain from engaging in any similar business for a period of three years if either she or Mrs. Cust should have seen fit to terminate the contract. That part of the contract is expressed so that it might seem at first glance to give equal rights to Mrs. Barry and Mrs. Cust and to impose corresponding obligations upon them. We refer to the clause: “for a period of three’ years after connection is severed, that
 
 a partner
 
 agrees not to enter into any business similar to that taught her by Mrs. Cust.” [The italics are ours]. The term “a partner” would mean either partner, but for the phrase “any business similar to that taught her by Mrs. Cust.” That phrase identifies Mrs. Barry as the only partner who was bound not to enter into any similar business for a period of three years after a severing of the partnership relations by either of the partners. That part of the contract was null, and for that reason the Item Company cannot be held liable in damages for any business dealings had with Mrs. Barry after the end of February, 1940. As there is no definite allegation of the extent of any loss sustained by Mrs. Cust for acts committed by Mrs. Barry before the end ’of February, 1940, the petition does not disclose a cause of action against the Item Company for dealings had with Mrs. Barry.
 

 The'judgment is affirmed.