FOURNET, Justice.
 

 The plaintiff, Boyd Templeton, alleging that the Dixie Auto Lee Stores, Inc., and
 
 *337
 
 the Interstate Electric Company entered into a scheme or collusion with M. M. and Marshall Hearne for the purpose of inducing the latter two to breach their contract with him for the purchase of his business (including his stock and fixtures) then being operated in Jonesboro, Louisiana, under the trade name of Templeton Dixie Auto Lee Store, in order that the companies might sell the Hearnes new stock and fixtures, seeks to recover damages against the four in solido in the sum of $2,571.85.
 

 The Hearnes denied the alleged scheme or collusion or that they were liable to the plaintiff, averring specifically that Dr. M. M. Hearne had no interest in the transaction other than to finance his son in the event the deal was consummated, and that inasmuch as it was never consummated, due to the plaintiff’s inability to comply with his agreement to secure the approval of the companies to the transfer of the franchise to use the name “Dixie Auto Lee Stores” to Marshall Hearne, neither was liable. The two companies likewise denied there was any scheme or collusion entered into for the purpose of inducing the Hearnes to breach their contract with the plaintiff, they averring they declined to transfer Templeton’s franchise to Hearne in the exercise of the discretion they had retained in the contract with Templeton and for good cause, i. e., the unpleasant and unsatisfactory business relations with him due to the small amount of merchandise he ordered, his purchase of merchandise from other sources, and his failure to promptly settle his account. They admitted the issuance of an independent franchise to Hearne. In reconvention, the Interstate Electric Company sought to recover from the plaintiff the sum of $707.25, with 8% interest from October 11, 1940, until paid.
 

 From a judgment dismissing the plaintiff’s suit and the reconventional demand, the plaintiff has appealed.
 

 It appears that the Dixie Auto Lee Stores, Inc., a Mississippi corporation, having acquired from the United States Patent Office the exclusive right to use the trade name of Dixie Auto Lee Store, and from the Interstate Electric Company, a Louisiana corporation domiciled in New Orleans, an exclusive sales agency, entered into a contract on May 21, 1940, granting the plaintiff, Templeton, a franchise authorizing him to use this trade name in connection with his business in Jonesboro, Louisiana, Templeton obligating himself under this contract to use Interstate merchandise in his store exclusively. In the early part of February; 1941, desiring to avail himself of an offer by Dr. M. M. Hearne to finance -the purchase of the business by his son Marshall, Templeton called on D. C. Whittle, the sales representative of Interstate at Alexandria, Louisiana, through whom he had obtained his franchise, since it was necessary, in order to consummate the transaction, to be sure that the franchise could be secured for
 
 *339
 
 Marshall. Accordingly, Whittle went to Jonesboro and met with the Hearnes and Templeton and assured them that once they had agreed upon the price to 'be paid the matter of securing the approval of the transfer of the franchise to Marshall would be a mere formality. The price having been agreed upon, the place of business was closed so that the inventory could be taken with the assistance of Whittle, and the keys were thereafter turned over to Marshall Hearne. A week and a half later, after Marshall, accompanied by his father and brother, had met in New Orleans with Leon Mattes, sales manager of the Interstate Electric Company and supervisor of the Dixie Auto Lee Stores, Inc., and O. G. H. Rasch, secretary-treasurer of both companies, Hearne attempted to return the keys to Templeton with the explanation that he had not been able to secure the franchise, but Templeton refused to accept- them. Subsequently, within four weeks of the time the Hearnes i interviewed the company officials in New Orleans, Mattes and Whittle called on Marshall in Jonesboro and delivered a-franchise to him. Under this franchise Hearne, some time during the middle of April, began doing business in a new location equipped with new fixtures and stock. At about the same time several suits were filed against the plaintiff, two by the attorney who is representing the defendants here. One of these suits, by the Interstate Electric Company on an open account to recover $707.25, was dismissed shortly after the plaintiff reconvened to recover the amount being claimed by him in this suit. In another, the goods of the plaintiff were seized and sold and the proceeds thereof distributed. In the meanwhile, on March 18, the plaintiff was notified by registered mail to desist from using the trade name Auto Lee Store since his franchise to use this trade name had been cancelled.
 

 Under the terms of the contract entered into by the plaintiff with the Dixie Auto Lee Stores, Inc., the licensee, Templeton,is authorized to negotiate the transfer of his franchise, subject to the approval of the licensor, Dixie Auto Lee Stores, Inc., in which event the licensor is empowered to complete the negotiations; the franchise is not subject to cancellation by the licensor for the causes set out in the answer of the companies filed here without the licensee being given 30 days prior written notice by the licensor. The only causes for which the contract could be cancelled without this notice ar-e set out in Section 13 (failure to observe certain required trade practices) and in Section 17 (where both parties are given the right to cancel in the event of the insolvency, bankruptcy, etc.,of the other). 'Neither of these causes is pertinent here.
 

 The record shows that soon after the meeting between the Hearnes and the representatives of the two companies, these companies, through Mr. Mattes, addressed a letter to the plaintiff on February 26 advising him of the meeting in
 
 *341
 
 New Orleans and its purpose. He stated the companies were unwilling to complete the negotiations for the transfer (1) until Templeton had liquidated his account with them, and (2) unless steel fixtures were used by the purchaser. On March 5 the plaintiff addressed a letter to Mattes advising him that while the Hearnes were willing to invest some $3,000 in the business, most of that was for new stock and they were unwilling to incur the additional expense of acquiring new fixtures. He implored Mattes to assist the Hearnes in-securing this franchise since all parties concerned had entered into the contract in good faith and upon the assurance of Whittle that securing the franchise would be a mere formality; he particularly urged this since at that time his store had been closed for nearly three weeks. He further assured Mattes that upon the completion of the transaction, in accordance with his agreement with the Hearnes, the balance due Interstate would be paid in full.
 

 Mattes promptly answered this letter on March
 
 7
 
 advising Templeton there was nothing that could be done for him; that his account was being placed in the hands of an attorney with instructions that suit be filed against him and his merchandise seized. In this letter Mattes states he thinks "it would be the best way out for everyone concerned if you were to see Dr. Hearne and arrange to make some fair settlement with him for the purchase of the fixtures and the merchandise, because, if we are obliged to sue and it goes into Court, and you are forced to sell your assets and merchandise at a forced sale, I know it will bring considerably less than if you were to sell it to a ready purchaser, who is going into some type of business;” further, that he understood “the Officers of our company have cancelled your Dixie Auto Lec-Store Franchise.”
 

 From the tenor of this letter it appears to us that the plaintiff, instead of receiving the cooperation he was so earnestly seeking, was being met with every manner of coercion that an official of the company could exert in an effort to have him reduce the price agreed to between him and the Hearnes for his fixtures and merchandise. We fail to appreciate the object of this letter unless it was to assist Marshall Hearne in purchasing the plaintiff’s merchandise and fixtures at the lowest possible figure so that the new fixtures required by the defendant company could be purchased without the expenditure of any more money than was contemplated. There was no difference between the plaintiff and Marshall Hearne to settle since Marshall was obligated to purchase Templeton’s fixtures and stock at a stipulated price, in respect to which agreement the companies were without interest.
 

 If there is any doubt as to the attitude of the companies in their dealings with the plaintiff with respect to this transaction, this is clarified by the subsequent action of the officials in issuing a franchise to
 
 *343
 
 Marshall Hearne under an independent contract, cancelling the plaintiff’s franchise without the required notice, and instituting suit against him on open account, resulting in the ultimate seizure and sale of his property, as he had been warned would be the outcome. This clearly shows the insincerity of the companies in their repeated protestations that their refusal to give consideration to the approval of the contract negotiated 'by the plaintiff until he had first paid his account in full, since by their very actions the means of bringing about the most expeditious liquidation of this account was being thwarted by them.
 

 It is our concerted opinion, from a thorough study and analysis of the entire record, that the conclusion is inescapable that in accordance with a common understanding between Marshall Hearne and the officials of the companies he was induced to breach his contract with the understanding he would be given an independent contract or franchise. Under these circumstances we think he is liable. The fact that -the plaintiff was unable to secure the approval of the company to the transfer of the franchise he had secured from the Dixie Auto Lee Stores, Inc., is immaterial under the facts here outlined. However, under the well settled law of this state that “one who is not a party to a contract is not liable in damages to one of the parties to the contract for inducing the other party to breach the contract” (Cust v. Item Company, 200 La. 515, 8 So.2d 361, 363, and the authorities therein cited), the defendant companies are not answerable in damages in this instance.
 

 While we think the evidence clearly shows Dr. Hearne had knowledge, if he did not in fact participate in the common understanding that caused his son to breach the contract, the evidence fails to establish that he had any other interest in the transaction than to finance Marshall in this new venture, and therefore cannot be held liable.
 

 As damages the plaintiff is claiming the sum of $2,571.85, being (1) the amount of the inventory, $1,596.85; (2) “rent accrued and pending at $35.00 a month for a period of eight months”, $280.00; (3) “storage of merchandise for 4 and % months pending litigation at $20.00 per month,” $95.00; and (4) “loss of wages and earnings at $200.00 per month for a period of three months,” $600.00.
 

 Since the plaintiff’s entire stock and his fixtures were seized by the lessor for the nonpayment of rent and sold at sheriff’s sale, it not appearing in the record the amount realized from such sale nor the manner of its distribution, it is impossible for us to arrive at the actual loss the plaintiff suffered by Hearne’s failure to pay him the inventory price agreed upon as consideration for the sale. We do not think the plaintiff is entitled to the second and third claims if these amounts were paid out of the proceeds of the sale. Consequently, we will remand the case for the purpose
 
 *345
 
 of obtaining this information so that we may properly determine the actual loss.
 

 Nor do we think the plaintiff is entitled to recover the amount claimed to have been lost in wages and earnings for three months, he having failed to establish this claim with that degree of certainty required by law. This claim is supported by the plaintiff’s simple statement that he was making between $200 and $250 a month in the operation of his
 
 store
 
 and
 
 filling station
 
 without any showing as to what portion was being derived from each. Furthermore, this simple statement, unsupported by any facts or records justifying the conclusion that his income monthly actually amounted to this figure, is entitled to little probative value.
 

 We are powerless to entertain the claim of the Interstate Electric Company since the company .did not appeal from the judgment dismissing its reconventional demand and did not answer the plaintiff’s appeal. That judgment is now final.
 

 For the reasons assigned, the case is remanded to the lower court for the restricted purpose of ascertaining the amount realized from the forced sale of plaintiff’s assets and the distribution of these funds in order that the proper judgment may be entered in this matter.
 

 O’NIELL, C. J., is of the opinion that the judgment appealed from should be affirmed.