216 So.2d 650 (1968)
ROUSSEL PUMP & ELECTRIC CO., Inc.
v.
Carl G. SANDERSON, Edmond Q. Parson, and the New York Air Brake Company.
No. 3174.
Court of Appeal of Louisiana, Fourth Circuit.
December 2, 1968.
Rehearing Denied January 6, 1969.
*651 Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Cicero C. Sessions, Robert E. Winn and Maurice Burk, New Orleans, for plaintiff-appellant.
Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, for defendants-appellees.
Before SAMUEL, BARNETTE and JOHNSON, JJ.
*652 BARNETTE, Judge.
This is an appeal from a judgment granting a motion for summary judgment insofar as it affects appellant's claim in tort against appellee. The issues ex contractu are still pending in the district court and are not before us at this time. Defendant-appellee, The New York Air Brake Company (Aurora Pump Division) now Aurora Pump Unit of the General Signal Corporation, hereinafter referred to as Aurora, in motion for summary judgment, in effect contends that plaintiff, Roussel Pump & Electric Co., Inc. (Roussel), has no cause of action against it under the particular facts of this case. Aurora contends that the pleadings, depositions, and answers to interrogatories show there is no material issue of fact in dispute and therefore it is entitled to summary judgment as a matter of law.
Aurora is a manufacturer of industrial pumps. In a large measure its sales are carried on by the use of local organizations performing either or both sales representation or distributionship functions within a particular sales area. For some time prior to 1962 the local franchise dealer for Aurora products was Leo Roussel, doing business as a sole proprietorship under the name of Roussel Pump & Electric Co. The agreement between Aurora and Roussel gave the latter an exclusive franchise to sell and distribute Aurora products in certain defined territories of Louisiana and Mississippi.
On April 1, 1962, Leo Roussel died and his assets devolved upon his wife and children. The business was taken over and operated by his wife, Therese Roussel.
On July 1, 1962, a new written franchise agreement was entered into between Aurora and Mrs. Roussel, acting as sole proprietor of Roussel Pump & Electric Co. This contract provided, inter alia, that it could be cancelled at any time for good cause. It further provided that it could be cancelled on the anniversary date without assigning any cause whatever if proper notice of 30 days was given.
In August, 1963, Roussel Pump & Electric Co., Inc., was chartered as a domestic corporation doing business in Orleans Parish, Louisiana. For all practical purposes this corporation took over the operation of the franchise dealership, although no formal notification was given to Aurora nor any transfer of the franchise ever formally made to the corporation. Mrs. Roussel was the controlling stockholder in the corporation.
At the time of incorporation of Roussel and until March, 1965, defendants Carl G. Sanderson and Edmond Q. Parson were in the employ of the company and constituted its entire sales force. In addition to selling, they supervised installation and repairs of the pumps and all other pertinent matters involving the franchise. For all practical purposes they ran the corporation. Upon incorporation of the company, Sanderson became vice-president.
On March 3, 1965, Sanderson and Parson tendered their resignations to Mrs. Roussel although both continued to work for the corporation for about a week thereafter.
The record reveals that prior to March 3, 1965, Parson and Sanderson initiated steps to establish a partnership that would engage in selling and distributing industrial pumps. Application for occupational licenses was made in January, 1965. A business location was established at Parson's home in January, 1965, and later moved to a permanent location in Jefferson Parish. At this same time stationery was acquired carrying the firm name of Parson and Sanderson. However, it appears that the partnership did not engage in actual selling until the latter part of March, 1965.
By letter dated March 11, 1965, Aurora informed Mrs. Roussel that it was cancelling the franchise agreement and that after May 14, 1965, all future orders were to be forwarded to the firm of Parson and *653 Sanderson. No cause was given for the cancellation as required by the agreement. Plaintiff immediately brought suit to enjoin the attempted cancellation, and by letter of April 6, 1965, defendant withdrew its notice of cancellation. However, on May 6, 1965, Aurora again notified plaintiff of its intent to terminate the franchise as of July 1, 1965, the anniversary date of the agreement. On July 9, 1965, defendant informed plaintiff that the new distributor for Aurora products in the Louisiana-Mississippi area was the firm of Parson and Sanderson. Aurora has been doing business with the Parson and Sanderson firm since that date.
Plaintiff filed this suit contending that Parson and Sanderson, with the cooperation and assistance of Aurora, violated their fiduciary relationship with appellant; that they conspired with Aurora to violate its contract with plaintiff; and that Aurora, Sanderson, and Parson conspired to and jointly acted to interfere with the business relationship existing between plaintiff and Aurora on the one hand and plaintiff and its employees on the other. Plaintiff further contends that defendants' actions fall with the purview of LSA-C.C. arts. 2315 and 2324 and it is entitled to relief ex delicto. Defendant Aurora through motion for summary judgment sought dismissal of the suit contending plaintiff had neither a cause of action against it in tort nor in contract. The trial court maintained the motion for summary judgment and dismissed plaintiff's suit against Aurora only insofar as it sought damages ex delicto. Its right to try the issues of damages ex contractu was fully reserved. Thus, the only issue before us on this appeal is whether there exists a genuine issue of material fact so as to preclude summary disposition of plaintiff's claim in tort against Aurora.
Summary judgment procedure is not intended to be used as a device to avoid trial or to deny a litigant his day in court as long as there remains a "genuine" and "material" issue of fact. If these conditions are met and the motion for summary judgment is properly and timely filed and the mover is entitled to judgment as a matter of law, the motion for summary judgment should be maintained. LSA-C.C.P. art. 966.
In this case the plaintiff strongly contends there are genuine issues of fact relative to the alleged conspiracy and that such facts are material to the case. The defendant Aurora first denies there is any issue of fact, and secondly, as if in the alternative, that even so, such issue of fact is not material and it is entitled to judgment as a matter of law.
Bearing in mind that we are concerned here only with the issue of damages ex delicto and the correctness of the summary judgment to that limited extent, we have carefully examined the allegations of plaintiff's petition to determine just what "conspiracy" or other tortious act is charged to the defendant Aurora. In article 4 of its petition plaintiff alleged that at the time Sanderson was in a fiduciary relationship to the plaintiff corporation "Parson and Sanderson conspired together while in the employ of plaintiff" and they "negotiated with defendant Aurora and conspired with Aurora to violate its contract with plaintiff by cancelling the aforesaid exclusive franchise, and granting this franchise to defendants Sanderson and Parson."
In subsequent articles of its petition, plaintiff makes various allegations of acts and consequences in connection with and resulting from "the aforesaid conspiracy." Chief among its complaints is that as a direct result of the alleged conspiracy its business has been destroyed in its entirety and "switched to defendants Sanderson and Parson."
In brief, plaintiff's case is based upon an alleged conspiracy between Sanderson, Parson, and Aurora to breach Aurora's contract with plaintiff and to induce Sanderson and Parson to breach their fiduciary *654 relationship and implied contract with plaintiff, all to the end that the exclusive franchise as distributor of Aurora pumps was taken from plaintiff and given to Parson and Sanderson.
It should be noted that plaintiff has alleged that the parties conspired together to induce Aurora to breach its contract with plaintiff. Obviously no action ex delicto can be maintained against Aurora on this allegation. Whatever right of redress plaintiff has for this alleged breach is amply protected by its action against Aurora ex contractu, which was not dismissed and is now pending trial. The issue of damages ex delicto against Parson and Sanderson is not before us on this appeal. Therefore we must look further to find some basis upon which to maintain plaintiff's action ex delicto against Aurora.
As indicated above, plaintiff's only allegation of tort against Aurora is that Aurora, through its alleged "conspiracy" with Parson and Sanderson, assisted and encouraged them to breach their fiduciary relationship and implied contracts of employment with plaintiff. This, plaintiff strenuously contends, constitutes an actionable tort. In support of this contention, plaintiff relies upon LSA-R.S. 12:36, which reads as follows:
"Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith, and with that diligence, care, judgment, and skill which ordinarily prudent men would exercise under similar circumstances in like positions."
From this premise, plaintiff argues that the violation of a fiduciary relationship is an "unlawful" act, the assistance or encouragement of which is denounced by LSA-C.C. art. 2324, which reads as follows:
"He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
It is incredible that Parson and Sanderson would resign their positions of employment and set up a competing business on a mere hope that they would take over the Aurora franchise. It seems obvious that there was some prior communication with Aurora and, at least, some "encouragement" on Aurora's part or an implied agreement with its representatives. This incredibility is emphasized by the fact that simultaneously with the resignation of Parson and Sanderson and the establishment of their competitive business, Aurora attempted the cancellation of its franchise agreement with plaintiff and its subsequent transfer to Parson and Sanderson. This was not a mere coincidence. The immediate transfer of the franchise was delayed by the injunction proceedings but was effected as soon as possible within the terms of the agreement.
There remained unanswered, however, certain factual questions relating to the details of the prior agreement between Parson and Sanderson with Aurora, and the nature and extent of inducements which Aurora might have held out to them to "assist" or "encourage" them to breach their fiduciary relationship and contract of employment with plaintiff. To this extent it might be conceded that there are certain genuine issues of fact, but what is decisive in determining the correctness of the summary judgment is whether or not these are the material facts; i. e., those facts that have legal probative force as to a controlling issue.
Under certain factual situations, an action ex delicto might be maintained against parties who in furtherance of a conspiracy commit various acts to destroy a business, but we will not attempt to speculate what acts might, in a given situation, be actionable in tort. In this case plaintiff has not alleged any acts by Aurora that might tend to the destruction of its business except such as relates to the inducement of *655 plaintiff's employees to resign, set up their own competitive business, and take over the Aurora franchise. It must be conceded that Aurora had a right to negotiate a new franchise contract. If as a result of its granting a new franchise plaintiff's business for all practical purposes was destroyed, that was an unfortunate consequence to plaintiff. Aurora was simply doing that which it had a right to do in furtherance of its own business interests. If it was done in violation of a contract it might be considered as an element of damage in a proper action ex contractu.
In Cust v. Item Co., 200 La. 515, 8 So.2d 361 (1942), the plaintiff, as in this case, cited and relied on LSA-C.C. art. 2324. The Court stated that that article merely imposes the liability of a tort feasor upon one who causes or assists or encourages another to commit a tort. But counsel for plaintiff in that case did not contend that the defendant committed a tort or did anything more than induce a party to violate a contract. The Court held:
"* * * But it is now well settled that one who is not a party to a contract is not liable in damages to one of the parties to the contract for inducing the other party to breach the contract." (Citing authorities) 8 So.2d at 363.
This was followed and reaffirmed by the Supreme Court in Templeton v. Interstate Electric Co., 214 La. 334, 37 So.2d 809 (1948), and seems to be the well-settled jurisprudence of this State. New Orleans Opera Guild, Inc. v. Local 174, Musicians Mutual Protective Union, 242 La. 134, 134 So.2d 901 (1961); Delta Finance Company of Louisiana v. Graves, 180 So.2d 85, La. App.2d Cir. (1965); Franzella Realty, Inc. v. Kolb, 152 So.2d 837, La.App. 4th Cir. (1963).
Counsel for plaintiff seeks to distinguish this case from Cust and Templeton by contending that while Parson and Sanderson were induced by Aurora to breach their contract with plaintiff, the breach was one of a fiduciary relationship, and because of this element of wrong denounced by LSA-R.S. 12:36, Aurora is liable as a tort feasor under LSA-C.C. art. 2324.
In order to reach this conclusion it would be necessary to hold that the alleged breach of fiduciary relationship was "unlawful." LSA-R.S. 12:36 in our opinion does no more than state a principle of law based upon morals and business ethics. Its purpose in the Model Business Corporation Act is to emphasize the duty and implied obligation of fidelity owed by officers and directors to the corporation. A breach of this obligation may be cause for legal redress against the offending officer in a proper action ex contractu, but it is not an "unlawful" act within the contemplation of LSA-C.C. art. 2324. Therefore, we must reject plaintiff's argument that this case can be distinguished from those cited above, and the principle of law which they affirm must be applied in this case.
It is therefore of no consequence, insofar as the limited issue here is concerned, that Aurora did, as alleged, assist, encourage or induce Parson and Sanderson to violate their contract of employment with plaintiff or, as to Sanderson, to violate the fiduciary obligation which he, as vice-president, owed the plaintiff corporation. The only issues of fact remaining unanswered, as indicated above, are therefore not material. Their answer, in the respect most favorable to plaintiff, could establish no more than the fact that Aurora did assist, encourage or induce the violations and the transfer of the pump franchise as alleged. This would not give plaintiff a cause of action ex delicto against Aurora, and to the limited extent granted, Aurora is entitled to summary judgment as a matter of law.
For the foregoing reasons, the judgment appealed from is affirmed at appellant's cost.
Affirmed.