432 So.2d 926 (1983)
Patrick S. D'ANTONI and Dr. Joseph S. D'Antoni, Jr.
v.
Rosina D'ANTONI, Maura Ann D'Antoni Hawkins, and William H. Syll, Jr.
No. CA 0469.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1983.
*927 Herbert J. Garon, Garon, Brener & McNeely, New Orleans, for defendants-appellees.
C. Ellis Henican, Henican James & Cleveland, New Orleans, for plaintiffs-appellants.
Before SCHOTT, BARRY and KLEES, JJ.
SCHOTT, Judge.
This suit began with a petition by plaintiffs, Patrick S. D'Antoni and Dr. Joseph S. D'Antoni, Jr. for injunctive relief and specific performance of an option agreement against defendants, Rosina D'Antoni, Maura Ann D'Antoni Hawkins, and William H. Syll, Jr. Plaintiffs amended their original petition to claim damages against defendants in the amount of $130,000 and further amended their petition to discontinue the proceedings against Rosina and Syll on the basis of a compromise of the claim against them and to increase their claim for damages against Maura to the sum of $1,200,000. Maura responded with peremptory exceptions of no cause of action and res judicata. From a judgment sustaining the exception of no cause of action and dismissing plaintiffs' suit they have appealed.
The correctness of a judgment sustaining an exception of no cause of action is considered by accepting as true all of the factual allegations of the petition as amended and determining whether plaintiffs are entitled to relief as a matter of law based on those alleged facts. No facts may be considered outside of the four corners of the petition. Thus, we begin with a summary of the facts alleged by plaintiffs.
In December, 1976, Rosina granted to plaintiffs and others, including Maura, an option to purchase her stock in Harbor Banana Distributors, Inc. and her interest in D & J Investment Company, a partnership. The grant provided that upon the exercise of the option any optionee could pay the purchase price over a five year period. On September 18, 1979, before any other optionee acted, plaintiffs notified Rosina that they were exercising their option rights. However, on September 21 Rosina notified plaintiffs that earlier that day she transferred her interest in Harbor Banana to Maura and had arranged with the corporation for a transfer of her stock. Based on these allegations plaintiffs originally sought injunctive relief to prevent the transfer of Rosina's stock and specific performance of their option against Rosina.
In their first amending petition plaintiffs made these additional allegations: Defendants were in bad faith and used fraud and misrepresentations to prevent them from obtaining title to the Harbor Banana stock and D & J Investment. On September 19 they "conspired" to have Rosina execute a document transferring her interest in the entities to Maura and at the same time had another document executed by Maura and Rosina stating that it was not the intention of the parties to transfer any of Rosina's interest to Maura. However, Rosina and Maura failed to reveal their true intent to plaintiffs, they maintained that Rosina's interest had in fact been transferred to Maura, and Rosina advised plaintiffs that she could not carry out plaintiffs' option agreement because she had already made the transfer to Maura. Maura admitted that she never executed her option rights between December, 1976 and September 21, 1979. Thus, defendants conspired to prevent plaintiffs from executing their legal rights under their contract with Rosina and damaged them.
In a second amending petition plaintiffs alleged that they had settled their claim against Rosina and Syll and increased the amount of their claim against Maura.
*928 In sustaining Maura's exception of no cause of action the trial judge reasoned as follows:
"Plaintiffs' rights flowed from their contract with Rosina. If they were damaged wrongfully, it was because Rosina sought to avoid her obligation imposed by the option agreement. If Maura did anything wrong, it consisted of her persuading Rosina to default on the option agreement. Louisiana does not recognize a cause of action for a defendant's inducement of another to break a contract. New Orleans Opera Guild v. Local 174, 242 La. 134 So.2d 901 (1961); Cust v. Item Company, 200 La. 515, 8 So.2d 361 (1942)."
At the outset we must decide what plaintiffs' suit is about when their pleadings are stripped of labels, conclusions and non-essentials. Plaintiffs have a simple suit for breach of contract against Rosina. They purchased an option and exercised it (so they alleged) and Rosina refused to perform her obligation to convey. Whether Rosina's conduct is characterized as fraudulent, immoral, unlawful, illegal, or what have you by plaintiffs her conduct was not tortious, not an offense or quasi offense under LSA C.C. Arts. 2315 et seq., but simply a breach of her contract with plaintiffs. Her refusal to perform constituted the breach and made her conduct actionable in damages to plaintiffs. The concoction of meaningless documents with Maura could not aggravate or increase Rosina's already complete breach of contract with plaintiffs. Thus, Maura's participation in the concoction of these fraudulent documents did not and could not cause damage to plaintiffs who were already damaged by Rosina's breach of contract.
Plaintiffs contend that they are entitled to recover under C.C. Art. 2324 which provides in part:
"He, who causes another person to do an unlawful act, or assists, or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act."
Plaintiffs allege that Rosina's act was "unlawful" so that Maura's assistance and encouragement is actionable under this article. The case law does not support plaintiffs' argument. The "unlawful" act referred to in Art. 2324 means a tort, not a breach of contract. Cust v. Item Co., 200 La. 515, 8 So.2d 361 (1942), Hartman v. Greene, 193 La. 234, 190 So. 390 (1939).
The principal thrust of plaintiffs' argument is that they should be allowed to recover even though Maura's conduct was simply an inducement for Rosina to breach her contract with them. However, as the court recognized in Moss v. Guarisco, 409 So.2d 323 (La.App. 1st Cir.1982), the Supreme Court has refused to recognize a cause of action for inducing a breach of contract, and an intermediate court of appeal is required to apply the law as pronounced by the Supreme Court. Plaintiffs argue mightily about the harshness of the law, but they will have to address those arguments to the Supreme Court.[1] Plaintiffs refer us to Justice Lemmon's comment in his dissent to the denial of the writ application in the Moss case, 412 So.2d 540, as authority for us to recognize their cause of action, but we do not regard that comment as authority to disregard the definitive rulings of the court on the subject such as Templeton v. Interstate Electric Co., 214 La. 334, 37 So.2d 809 (1948).
Next plaintiffs argue that this case should be treated as an exception to the general rule as was done in Martin v. Sterkx, 146 La. 489, 83 So. 776 (1920) and Carson v. Stephens, 14 La.App. 272, 129 So. 381 (La.App. 2nd Cir.1930). First, it is questionable that these old cases are true exceptions to a rule which was restated in the Cust case in 1942 and Templeton in 1948. We are bound to follow the last expression of the Supreme Court. Second, this case is clearly distinguishable on its *929 facts from the Martin and Carson cases. In the latter cases the defendants committed acts which directly caused contracting parties to breach their contracts with the plaintiffs. The same is not true under the allegations of plaintiffs in the instant case. Rosina's breach was complete from the moment she declined to convey her interests to plaintiffs and the documents Rosina signed with Maura did nothing to add to or enlarge upon that breach. If the tenant in the Martin case had left on his own volition, and, subsequently, the defendant had patted him on the back and offered him lodging; or if Gladney, in the Carson case, had decided on his own volition to tell plaintiff not to build his house, and, subsequently, the neighbors had commended Gladney for making a wise decision; the cases would be more like the instant case and plaintiffs would have been denied recovery.
Finally, plaintiffs' reliance on PPG Industries, Inc. v. Bean Dredging Corp., 419 So.2d 23 (La.App. 3rd Cir.1982), Writ granted, November 5, 1982, is misplaced. We can only speculate on what the Supreme Court may do with the case but even assuming that the Court of Appeal decision is reversed the case is distinguishable from the instant case. There the question is whether there can be recovery by PPG for damages it sustained from having its gas supply from Texaco interrupted because of Bean's negligence in allowing its dredge to rupture the gas line. The Supreme Court may not even see this as a claim for negligent interference with contractual obligation as did the Court of Appeal. But even if that view is taken the direct-cause-effect scenario in the case stands in sharp contrast to the alleged facts of this case where Maura's activities cannot be said to have produced or caused Rosina's breach of contract.
Accordingly, the judgment is affirmed.
AFFIRMED.
NOTES
[1] The writer does not necessarily agree with the opinion in the Moss case that the Supreme Court should overrule its earlier decisions. Under our law a plaintiff has remedies which may be sufficient to protect himself as in this case where plaintiffs could and did demand specific performance of Rosina.