LOTTINGER, Judge.
This suit was filed by Fred Nelson against the Associated Branch Pilots of the Port of Lake Charles, Louisiana, seeking a declaratory judgment as to certain rights of members of the said association. Judgment below was for petitioner, as to the major portion of his demands, and the defendant has appealed.
Petitioner is a member of the Associated Branch Pilots of the Port of Lake Charles, Louisiana. Said association is composed of a number of harbor pilots each of whom are commissioned pilots un-' der the laws of the State of Louisiana. The agreement whereby the pilots formed the said association provides for benefits for sick, members of the association, fines for failure to comply with the rules of the association, and restrictions as to withdrawal from the association. Petitioner filed suit seeking a declaratory judgment as to his rights under said agreement relative to. the following matters, to wit:
1. As to whether or not petitioner is entitled to sick benefits, during his alleged illness during the months of January, February and March, 1947.
*438 2. As to whether or not petitioner refused to pilot the S. S. Conoco Denver on December 7, 1950, and whether the fine imposed upon him for said refusal was lawful under the rules of the Association.
3. As to whether or not petitioner could be ordered by the Association to take the turn of another pilot who had been rejected without receiving additional remuneration.
4. As to whether or not that portion of Article XI of the original Agreement entered into by the pilots which provides as follows:
“Provided, always, that no member or person shall be allowed or have the power to withdraw from this agreement nor shall he be settled with until he shall have first resigned his commission as a pilot and the same has been duly accepted by the proper authority, nor until he shall have given the Association his bond in the sum of .$3,-000.00 that he will not, during the existence of this Association, engage in the business of piloting or in any other business in conflict with the business or interest of this Association”,
is invalid under the Constitution and Laws of the United States and of the State of Louisiana.
■ As to the first three questions, the lower court held in favor of defendant, inasmuch as such questions were of a nature as to bring them legitimately within the rules and regulations of the Association. However, as to- the fourth question, which was most strenuously argued by both parties below, the lower court gave judgment in favor of petitioner, holding such an agreement to be against the public policy of this State and, therefore, null and void. This appeal has been taken by' defendant on the ruling of the lower court as to the fourth question. The appeal, on such question, has been met by petitioner, however, the first three questions have been abandoned on appeal. The appeal was originally taken to the Supreme Court, however, they refused jurisdiction under Section 29 of Article 7 of the Constitution of this State and have sent the matter to this court for consideration.
Since the original agreement, the bond for withdrawing members, as quoted above, has been increased to $5,000, however, the remaining provisions are the same.
The real question which is before us is whether or not a pilot, holding a valid commission from the Governor of the State of Louisiana, may withdraw from an association without resigning his commission, and still retain his rights to pilot ships in-competition with members of the association. Petitioner received his commission as a pilot under the provisions of Act 198 of 1928, as amended, now LSA-R.S. 34:1071 et seq. LSA-R.S. 34:1075 provides as follows:
“The pilots may form themselves into associations as they may see fit, not in conflict with any special or general .law of the state or of the United States.”
Petitioner claims that the restrictions against withdrawal of members from the association was contrary to- the laws of this state and deprives him of his right of life,, liberty, or property, without due process, of law as guaranteed by Article V and: XIV of the Constitution of the Uhited' States of America, and of his right under Article II of the Bill of Rights of the Constitution of the State of Louisiana, and that it does not afford petitioner equal protection under the law.
Similar contracts have been held void! by the courts of this state because of laclc; of mutuality. Two of the leading cases, on the subject are Blanchard v. Haber, 166. La. 1014, 118 So. 117; and Cust v. Item Co., Ltd., 200 La. 515, 8 So.2d 361, 364. In the Blanchard case, the contract provided-1 that one dentist was to work in the office-of-another dentist under a contract of employment.' The employer was Dr. Blanch--ard, whereas the employee was Dr. Haber.. Both held dental certificates issued under-the laws of this state. The contract of employment provided that Dr. Haber would-: not, within a period of ten years follow--ing the termination of his contract, engage, or attempt to engage, directly or indirectly, for himself or for others, in the-practice of dentistry within five blocks of" the then location of Dr. Blanchard’s offices.. *439 Dr. Haber resigned his position with Dr. Blanchard and set up dental offices within five blocks of Dr. Blanchard. The court held that the area of five blocks was the principal commercial district of the city and that the vast majority of dental offices were located in said area. To restrict Dr. Haber from practicing his profession in said area would fee almost the same as restricting him from following his dental profession. The court, therefore, refuséd an injunction restraining Dr. Haber from practicing dentistry within the area because of lack of mutuality and lack of serious consideration.
Subsequent to the Blanchard case, the Legislature passed Act 133 of 1934, now L'SA-R.S. 23:921. Said act provides as follows:
“No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court.”
This act recognized the propriety of the decision of the Blanchard case that such restrictions in contracts was against the public policy of this state. The 1934 act was cited, and was made the basis of the holding in the Cust case. In the Cust case the relationship was that of a partnership rather than that of employer and employee. Mrs. Cust was to teach Mrs. Barry the business, known as “Hospitality & Service Bureau”, and as part of the partnership agreement was a stipulation to the effect that Mrs. Cust’s partner could not engage in a similar business for a period of three years after leaving the partnership. Chief Justice O’Niell was the organ of the Court and, with regard to this stipulation, said:
“ * * * But our opinion is that that clause in the contract is contrary to public policy and therefore null. It was so held with regard to a similar clause in a contract of employment in the case of Blanchard v. Haber, 166 La. 1014, 118 So. 117. The public policy which was expressed in that decision was embodied in Act No. 133 of 1934, which declares that it shall be against public policy for a contract of employment to have a clause forbidding the employee to engage in any competing business at the termination of the contract, and that any such clause shall be null. The contract containing stick a clause in this case purports to be a co-partnership agreement, but public policy forbids such a clause as well in such a contract as we have here as in a contract of employment.”
We find no such essential difference between the relationships which would lead us to hold otherwise as to the restriction in the agreement before us. Certainly, if the said act applies to such restrictions in contracts of partnership, the same would apply to the restriction contained in the agreement setting up the Association. In reality, the amount of control exercised over the members of the Association was greater than would be present in a partnership, and the petitioner, with certain modifications, was no more than an employee of the Association. The By-Laws of the Association contained certain rules and regulations which are common to the employer and employee relationship.
The effect of the clause in the agreement was to deprive petitioner from making a living in the only occupation he knows and which he had pursued for many years, should he withdraw from the association. Free competition is one of the bases of our great democracy and of our sovereign state. The public policy of our state condemns such restrictions, and we hold the restriction in the agreement before us void and unenforceable.
For the reasons assigned, the judgment of the lower court is affirmed, all costs of this appeal to be paid by defendant.
Judgment affirmed.