88 So.2d 742 (1956)
BATON ROUGE CIGARETTE SERVICE, Inc.,
v.
Lester BLOOMENSTIEL.
No. 4246.
Court of Appeal of Louisiana, First Circuit.
June 29, 1956.
*743 Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellant.
Breazeale, Sachse & Wilson, Baton Rouge, for appellee.
LOTTINGER, Judge.
Petitioner, Baton Rouge Cigarette Service, Inc., is the applicant in rule for a preliminary injunction against its former employee, Lester Bloomenstiel, praying that defendant show cause why a preliminary injunction should not issue restraining him from using confidential information obtained from applicant's records in the solicitation and enticement of customers away from the petitioner. Petitioner further prayed that after due proceedings the rule be made absolute and a permanent injunction issue. The Lower Court rendered judgment in favor of defendant, and dismissed the proceedings. Petitioner filed a devolutive appeal.
The facts show that Lester Bloomenstiel was formerly the Manager of the Baton Rouge Cigarette Service, Inc., a Louisiana corporation domiciled in the Parish of East Baton Rouge, Louisiana, and engaged in the business of distributing and selling cigarettes through automatic vending machines. He served as manager of the company from the date the business was incorporated until he resigned on November 11, 1955, a period of about seven years. All of the capital stock of the corporation is owned by interests represented by Mr. Thomas A. Vaughn, of New Orleans, who exercised general supervision over the operations of the business. Mr. Bloomenstiel was solely responsible, as the manager of the company, for the general conduct of the corporation's business, including the solicitation of customers, the determination of commissions, and the maintenance and service of the machines installed.
A copy of Bloomenstiel's employment with the company was introduced into evidence. Said contract provides, in part, as follows:
"Sixth: Bloomenstiel agrees that for a period of five (5) years after the termination of his employment hereunder, however such termination may come about, he will not, directly or indirectly, be engaged or interested as owner, partner, stockholder, trustee, employee, agent or in any other capacity in the business of owning, selling, *744 leasing, operating or in any manner dealing in or with cigarette vending machines in East Baton Rouge Parish in the State of Louisiana."
On November 10, 1955, Bloomenstiel resigned his position with the company. Although he offered a two weeks' notice, Mr. Vaughn told him that he could leave immediately, and Mr. Bloomenstiel left on November 11, 1955. The following day the following notice was published in the State Times, a daily newspaper published in Baton Rouge:
"To My Friends and Customers:
"I am no longer connected with the Baton Rouge Cigarette Service. My future plans anticipate the possible establishment of my own business.
 "Sincerely,
 Lester Bloomenstiel
 Home Phone WA 1-5628"
Within two weeks following his resignation, approximately 36 of Baton Rouge Cigarette Service's best customers had cancelled their contracts with petitioner and had engaged vending machines owned and operated by a company formed and owned in part by Bloomenstiel.
Bloomenstiel admitted talking to two and possibly three customers of the petitioner company while he was still in its employ, relative to his new business venture, and further admitted that, previous to resigning, he ordered approximately 150 cigarette vending machines for his own use.
The petitioner introduced evidence to the effect that, prior to his leaving the employ of petitioner, Bloomenstiel went through their records and made a list of their best customers with the intention of enticing these customers away from petitioner after he had opened his own business. While Mr. Bloomenstiel admitted making many lists in his job with petitioner, he claims that these lists were made for the purpose of mailing checks to customers, repairing defective vending machines, calling on customers whose sales had fallen off, etc. He admits that he did make a list of petitioner's customers from memory after he had left their employment, however, petitioner failed to prove that such a list was made prior to his leaving his job with petitioner.
Petitioner filed this suit to enjoin and prohibit the defendant from soliciting and enticing petitioner's customers and from using or employing any of the confidential information obtained from the books and records of petitioner and any of the lists of petitioner's customers, copies of business records or any other trade secret belonging to petitioner secured by Bloomenstiel while in the employ of petitioner. The Lower Court rejected the petitioner's demands and dismissed the suit. Petitioner has taken a devolutive appeal.
There is no question in our minds that Paragraph 6 of the employment contract which is hereinabove quoted is absolutely null and void and against the public policy of our state. Act 133 of 1934, now LSA-R.S. 23:921, provides:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court."
Prior to the enactment of the above quoted statute, the Supreme Court in the case of Jones v. Ernst & Ernst, 172 La. 406, 134 So. 375, 376, said:
"* * * We know of no law, and have been referred to none, which prohibited them at the end of any monthly period from leaving defendant's employ. On the contrary, we think that in consonance with the spirit of free labor they ought to be maintained in their right to do so. Certainly no *745 action lies against plaintiff merely because he chose to employ them after they had left defendant's service. And this is so, even though plaintiff and defendant's former employees during their term of employment planned to engage in a competing business at the expiration thereof. Every person has the right to better his condition if he can lawfully do so." (Italics ours.)
The public policy of the state, as expressed in said statute, has been upheld by this Court in Nelson v. Associated Branch Pilots, 63 So.2d 437, decided by this Court, and in Martin-Parry Corp. v. New Orleans Fire Dection Service, 221 La. 677, 60 So.2d 83, 84.
Both parties cited the Martin-Parry Corp. case, the facts of which are not identical to the ones presently before us. In that case, the contract of employment provided:
"`* * * for a period of two (2) years after the termination hereof, disturb, hire, entice away, or in any other manner persuade any employee or dealer of the Company to discontinue his relation to the Company as an employee or dealer, as the case may be".
In discussing other cases, Justice McCaleb, who was the organ of the Court, said:
"* * * the employees agreed that, upon the termination of their employment, they would not engage in a business in competition with that of their employer, either for themselves or as employees of others, for a specified time. This sort of agreement, which is vastly different in nature from the covenant in the case at bar, has been deemed to be violative of public policy since 1934, when the Legislature, by Act 133, declared all such agreements to be void. However, it is to be noted that the rulings in Blanchard v. Haber and the other cases (which were decided before the enactment of Act 133 of 1934), that noncompetitive clauses in employment contracts are void, are predicated on the premise that such stipulations are potestative conditions."
That Louisiana is not alone in holding such contracts violative of public policy is shown by an article appearing in 27 Tulane L.Rev. 366, which says:
"A non-competition agreement ancillary to a contract of employment is unenforceable in most common law states today except for the protection of trade secrets, lists, and confidential matter, or in cases in which the services of the employee are unique or highly skilled. * * * Moreover, non-competition agreements in employment contracts have been made illegal by statute in a number of states including Louisiana."
However, the petitioner claims that its suit is based on an exception to the general rule to the effect that a former employee may be enjoined from using lists of customers, copies of such lists, or other records with respect thereto, which he obtained by reason of his employment, in the solicitation of his former employer's customers. As to this contention, we do not feel that the petitioner has proved that Bloomenstiel is using a list which he made while in the employ of petitioner.
The facts show that Bloomenstiel was manager of the petitioner's business for some seven years. It was his duty during this period of time, to solicit customers, determine commissions, and make payment of commissions. The petitioner had some 800 customers at the time Bloomenstiel terminated his employment. As he was so intimately connected with the business, we feel safe in stating that Bloomenstiel did not have to make a list of the customers, we feel sure that he himself must have known the names of practically all of the customers. Mr. Fred Matthews who succeeded Bloomenstiel as manager, and had only worked in said capacity for a few *746 weeks prior to trial of the matter, testified that, given time, he could name sixty or seventy percent of the customers of petitioner. Certainly, after having worked for a period of some seven years, he could have done better than that.
There was some testimony to the effect that Bloomenstiel made a list of some 150 customers of petitioner with the avowed purpose of soliciting their business for his own company after termination of his job with petitioner. Mr. Bloomenstiel emphatically denied making a list of petitioner's customers for said purposes. He testified that, in his position as manager, it was often necessary for him to make lists of customers. The purposes for such lists were to contact customers whose sales were lagging, to service or repair vending machines, to compute commissions and for payment of commissions. We do not believe that it was necessary for Bloomenstiel to make such a list as is claimed by petitioner, and petitioner has failed to prove that one was made and is now in the possession of Bloomenstiel.
The petitioner has quoted from the Restatement of the Law of Agency, Vol. 2, Sec. 396, as follows:
"Sec. 396 Using Confidential Information After Termination of Agency
"Unless otherwise agreed, after the termination of the agency, the agent:
"(a) has no duty not to compete with the principal; and is subject to a duty to the principal not to use or disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent may use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent."

We believe that the situation presented in this case comes squarely under the rule italicized, and, therefore, hold that the Lower Court was correct in refusing to grant the temporary injunction.
Petitioner contends that the Lower Court erred in dismissing its action. It contends that the hearing below was confined to the rule to show cause why a preliminary injunction should not be granted, and had nothing whatsoever to do with the determination of the merits of the permanent injunction. The minutes of the Lower Court indicate that the rule nisi was tried on the preliminary injunction only. Petitioner further contends that it had not agreed to try the case on the merits. We find no stipulation in the record that the case was to be tried on the merits. The defendant, however, contends that the trial below was on the merits of the whole case because the evidence filed in this record consists of a package of documentary offerings and 70 pages of transcript of testimony. There were six witnesses examined during the trial and the testimony on all six witnesses dealt with the merits of the issue involved. Defendant further contends that the question presented to the Lower Court was not whether there should be an injunction pending trial on the facts as the case was tried on the facts, and we are further informed that briefs on the law and facts were submitted to the Lower Court just as they were submitted to us. Defendant further contends that the sole object of this suit was to obtain an injunction, or, in other words, the injunction was not ancillary. We are inclined to believe that the defendant has merit in his contention and that the whole case was tried on the merits and that same should be disposed of accordingly since the main cause of action was an injunction and that the injunction itself was not ancillary, 43 C.J.S. Verba, Injunctions, § 198, p. 913. However, *747 it is not within the province of this court to make law but to interpret same. We find in McMahon Louisiana Practice, Vol. 2, Page 1281 et seq., a quotation as follows:
"Objection has been voiced to this provision by some lawyers on the ground that it entails the possibility of two trials before the final determination of the case, a situation which it is claimed did not exist under the practice established by the Code of Practice, thereby imposing additional labor upon counsel, and additional inconvenience to litigants.
"My own personal experience, which has been rather extensive in this particular field, is that where there has been a full hearing on a rule nisi, and where the sole object of the suit is the obtaining of an injunction, a case seldom goes so far as a trial on the merits. Each party usually presents the full facts and the law of his case in the first instance, and the conclusion arrived at, either in the lower court or on appeal, is so decisive that further litigation is unnecessary. My observation also has been that in practice there seldom is a case of any importance which does not require the appearance in court of counsel and litigants a number of times before a conclusion is reached."
We further note the rule set forth in 43 C.J.S. Verba, Injunctions, § 199 d (3), p. 921, is:
"* * * Unless the parties otherwise agree, the cause may not be finally determined on the evidence submitted at the hearing on the application for the preliminary injunction. * * *"
That there is a technical distinction between a hearing on the preliminary injunction, Louisiana State Board v. Martindale, La. App., 83 So.2d 544, and a hearing on the merits, Louisiana State Board v. Wimberly, La.App., 85 So.2d 679, is seen by the points unsuccessfully raised by appellants in these two cases. There are different delays and pleadings, LSA-R.S. 13:4062 et seq. and different types of evidence are admissible (affidavits in the preliminary injunction), and also technically there is a different burden of proof, the preliminary injunction just requiring a prima facie showing, the permanent injunction by the preponderance of the evidence, see First National Bank of Abbeville v. Hebert, 162 La. 703, 111 So. 66, 69, cited in McMahon Louisiana Practice, Volume 2, Page 1290. The comment in this last case is applicable here:
"Because of the circuitous and anomalous practice that is required by Act 29 of 1924 [La. R.S. 13:4062 et seq.] * * * this case has been virtually tried and disposed of on its merits, although, ostensibly, all that was tried or decided was the rule to show cause why the preliminary injunction should not issue. The refusal of the district judge to grant a preliminary injunction * * * was tantamount to a rejection of the demand for annullment of the sale; and our reversal of the judgment, after considering all of the evidence on the merits of the case, will be tantamount to an allowance of the demand for annullment of the sale. The courts cannot help that, and obey the statute."
Also in the case of Ridge Park v. Police Jury of Jefferson Parish, 210 La. 351, 27 So.2d 128, 129, the Supreme Court through Justice Fournet, now Chief Justice, said:
"Obviously the court was unauthorized to dismiss the plaintiff's suit on the merits since the only matter tendered to the court and submitted to it for adjudication under the rule nisi was `why a preliminary injunction should not issue in this cause as prayed for.' * * *
"`It is the approved rule that the granting or refusing of a preliminary *748 injunction is merely an interlocutory judgment designed to preserve the existing status pending a trial of the issues on the merits of the case.'"
In this latter case the Supreme Court overruled the judgment of the Lower Court dismissing the plaintiff's suit on a rule nisi and remanded same.
We are inclined to believe that there may have been a full hearing on the merits of this injunction but due to the absence of an agreement that the case was being tried on the merits, the plaintiff may not have brought forth all of the evidence available, and, for that reason, we are in no position to state definitely that the case was tried on the merits.
Therefore, for the above and foregoing reasons the judgment of the Lower Court is reversed insofar as it dismisses plaintiff's suit; in all other respects the judgment is affirmed. The appellees are to pay the costs here and all other costs are to await the final determination of this suit. The case is remanded to the Lower Court to be proceeded with according to law.
Judgment amended and as amended affirmed.