**WALT GARNER ASSOCIATES, INC.**

v.

**James BEAUHALL et. al.**

**Civ. A. No. 761308.**

United States District Court,
W. D. Louisiana,
Lake Charles Division.

July 11, 1980.

David R. Frohn, Camp, Carmouche, Palmer, Barsh & Hunter, Lake Charles, La., for plaintiff.

Fred H. Sievert, Jr., Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, La., John C. Satterfield, Satterfield, Allret & Colbert, Jackson, Miss., for defendants.

## OPINION

VERON, Judge.

This case arises out of a series of events that took place after the Standard Life and Accident Insurance Company (SLIC), an Oklahoma corporation, was placed into conservatorship by the Oklahoma state courts in February of 1975. Plaintiff, Walt Garner Associates, Inc., acting as the successor to the rights and interests of an unincorporated association headed by Walter H. Garner, alleges that James Beauhall, a former insurance agent for SLIC, acted contrary to the interests of Mr. Garner, who was a general agent for SLIC, and thus violated some fiduciary obligations that arose from an oral employment agreement between those two gentlemen. More specifically, plaintiff complains that Mr. Beauhall, having been hired by another company after the conservatorship order, sold cancer insurance to former SLIC policyholders thus depriving Mr. Garner of certain commissions he would have earned had the policyholders kept their cancer coverage with SLIC. Plaintiff also alleges that since the other defendants, American Public Life Insurance Company and its president, Ralph Edwards, hired Mr. Beauhall and knew of his activities, they are liable for the legal consequences flowing from those activities.

Because the one-year prescriptive period for tort-based causes of action in Louisiana had expired at the time this suit was filed, all such causes of action were dismissed by summary judgment of this court. Since plaintiff's remaining causes of action sound in contract, it is necessary to set out in some detail the various contractual relationships among the parties.

### GARNER AND SLIC

Under various agreements between SLIC and Walter H. Garner, SLIC authorized Mr. Garner to act as a General Agent. One of Mr. Garner's functions as general agent was to recruit and train soliciting agents for SLIC. These agents would then enter into written Agent's Contracts directly with SLIC but would be under a certain amount of supervision by Mr. Garner. Mr. Garner would help direct the sales efforts of the agents under his control and would process the policies sold by the agents. Garner thus acted essentially as an intermediary between the agents and SLIC. SLIC retained final authority, however, to hire or dis-

charge any agent. For his services as general agent, SLIC paid Mr. Garner, as his commission, a certain percentage of the premiums paid by the policyholders who had been procured by the agents working under him.

## BEAUHALL AND SLIC

James Beauhall entered into a written Agent's Contract with SLIC, dated April 18, 1973, which authorized him to act as a soliciting agent, essentially an insurance salesman, for SLIC. Though empowered under the terms of the contract to sell all types of insurance issued by SLIC, Mr. Beauhall specialized exclusively in the sale of cancer insurance. His compensation under the contract was in the form of commissions, and a schedule of the commission structure applicable to cancer insurance sales was appended to, and made a part of, his Agent's Contract.

The commissions took the form of both a flat dollar amount paid for each new policy sold by Mr. Beauhall, either $7 or $4 depending on the type of coverage, as well as a percentage of all the renewal premiums thereafter paid by the policyholder, 25% during the first year and 10% for ensuing years. Under the terms of his contract, if Mr. Beauhall left the employ of SLIC after having worked more than six months, he could continue to receive his renewal commissions for a period of time equal to the total time he had been employed with SLIC. During the course of his relationship with SLIC, all renewal commissions were paid to Mr. Beauhall directly by SLIC, and though there is some conflicting evidence as to who paid the flat rate commissions to Mr. Beauhall—Mr. Beauhall claiming they were paid by SLIC, Mr. Garner claiming they were paid by him—it is clear that those commissions were provided for by the Agent's Contract between SLIC and Mr. Beauhall and that they originated with SLIC, Mr. Garner being, at most, a disbursing agent.

After several months of service as a soliciting agent, Mr. Beauhall was given management responsibilities—first as Louisiana sales manager in August 1973, then as regional sales manager for Texas, Louisiana, and Mississippi in August 1974. In addition to the commissions he continued to earn as a soliciting agent, Mr. Beauhall began to receive from SLIC a salary and an expense account, and was given the use of SLIC credit cards. This management agreement between SLIC and Mr. Beauhall was never reduced to writing.

Mr. Beauhall had been thus employed by SLIC for almost two years when, on February 3, 1975, the District Court for Oklahoma County, Oklahoma ordered that SLIC be placed in conservatorship, and appointed the Oklahoma Insurance Commissioner as conservator. Less than three weeks later, on February 21, 1975, the conservator ordered SLIC to cease and desist from issuing any new insurance policies of any kind, and all agents and managers of SLIC including Mr. Beauhall were immediately so advised. The cease and desist order did not, however, prohibit SLIC from paying claims on and renewing its existing policies.

Though Mr. Beauhall never received any formal order dismissing him from employment with SLIC, in late February he received a salary check dated February 28, 1975 and marked "Final Check," and was asked to return his company credit cards at that time. Aside from two checks he received about a year later to cover certain renewal commissions owed to him under his Agent's Contract despite his termination, that salary check was the last remuneration Mr. Beauhall received from SLIC.

## BEAUHALL AND GARNER

Mr. Beauhall was recruited and trained by Mr. Garner and his staff in March and April of 1973, executed his Agent's Contract with SLIC in April, and began selling cancer insurance. No written agreement was ever entered into between Mr. Garner and Mr. Beauhall, so the exact nature of their employment relationship is not entirely clear. Like other agents working under Mr. Garner, Mr. Beauhall would procure applications for insurance from prospective customers and submit them for processing to Mr. Garner, who in turn submitted them

to SLIC for final approval and actual issuance of the policy. In addition, Mr. Garner provided Mr. Beauhall with at least some leads to prospective customers, particularly at the outset of their relationship. Exactly how much supervision Mr. Garner exercised over Mr. Beauhall's activities is not clear, but it appears that when Mr. Beauhall assumed management responsibilities he was given rather free rein to develop his territory as best he could.

When Mr. Beauhall assumed his management position, he began to receive, in addition to his pay from SLIC, commissions on the policies sold by the agents working in his region. These commissions, commonly known as overrides, were paid directly by Mr. Garner out of the commissions he himself earned under his contract with SLIC. These overrides represented the only compensation Mr. Beauhall received from Mr. Garner, and after the cease and desist order, these overrides were discontinued.

Mr. Beauhall's typical sales strategy, presumably taught during the training program, was to contact trade associations in order to obtain their endorsements of the SLIC cancer policy. Having obtained an endorsement, Mr. Beauhall would then approach the individual employers that belonged to the association. The employers in turn would arrange for Mr. Beauhall to make presentations to their employees, and those employees interested in obtaining the coverage would fill out the necessary forms and pay their first premium. Generally, as new employees were hired, they too would be given the option to buy the cancer coverage from SLIC. In most cases, arrangements were made with the employers to have renewal premiums deducted from the employees' paychecks and forwarded directly to SLIC, but the employers themselves would not contribute any part of the premiums. Although the SLIC policy was not a group policy, this sales strategy had an effect similar to that of a group policy in that once a portion of a particular employer's employees had obtained SLIC coverage, SLIC generally became the exclusive cancer insurer for that employer's employees.

When SLIC was placed in conservatorship and then ordered to cease and desist writing any new policies, Mr. Garner began contacting other insurance companies in an effort to work out an arrangement similar to the one he had with SLIC so that he and the agents that had worked under him could continue writing new business. Among the companies Mr. Garner contacted was Great Commonwealth Life Insurance Company, the company with which he eventually became associated as general agent. Mr. Garner advised Mr. Beauhall of these negotiations with Great Commonwealth around March 7, 1975, at which time Mr. Beauhall voiced his objections to the company because he considered the proposed commission structure to be unfavorable to the soliciting agents. On March 15, 1975, Mr. Garner held a meeting with Mr. Beauhall and the other state and regional managers formerly involved in selling SLIC cancer insurance to announce his association with Great Commonwealth and to enlist Mr. Beauhall and the others to sign Agent's Contracts with that company. Again Mr. Beauhall voiced his objections to working for the company and did not enter into any agreement, written or oral, either with Great Commonwealth or Mr. Garner.

### BEAUHALL, RALPH EDWARDS, and AMERICAN PUBLIC LIFE INSURANCE COMPANY

Beginning some time around March 7, 1975, Mr. Beauhall entered into negotiations with Ralph Edwards, President of American Public Life Insurance Company (APLIC), and other executives involved with APLIC's cancer insurance division. The object of the negotiations was twofold: the designing of a more competitive cancer policy that was similar to SLIC's policy and the marketing of the new policy by Mr. Beauhall and a sales team that he would put together. As a result of these negotiations, APLIC did in fact modify their cancer insurance plan, and, in late March, Mr. Beauhall was hired as a soliciting agent charged with selling this new policy.

In marketing APLIC's policy, Mr. Beauhall and his sales team, which included some of the agents that had formerly worked under him for SLIC, used much the same sales strategy they had used when working for SLIC. Mr. Beauhall managed to obtain the endorsements of some of the trade associations and employers who had previously endorsed the SLIC policy, and this in turn led some SLIC policyholders to terminate their SLIC coverage and purchase APLIC insurance instead. There is no evidence, however, that Mr. Beauhall ever misrepresented the financial condition of SLIC to induce employers to switch their endorsements to APLIC. In fact, Mr. Beauhall distributed a detailed list of instructions to his sales team that specifically ordered his agents to refrain from making any derogatory remarks about SLIC and to advise SLIC customers that their coverage with SLIC was not in jeopardy. The evidence tends to show that the chief reason employers chose to endorse APLIC was that their new employees were unable to obtain SLIC insurance because of the cease and desist order.

### THE MERITS

The essence of plaintiff's complaint here is that by converting some SLIC business to APLIC, Mr. Beauhall violated some fiduciary duty he owed Mr. Garner by virtue of their employment relationship. Mr. Garner contends, first, that Mr. Beauhall was still employed by Garner when he began selling for APLIC, and second, that even if he was no longer an employee, the fiduciary duty he owed to Mr. Garner lingered after the termination of the employment relationship.

As to the first contention, the facts simply do not bear out that Mr. Beauhall was still an employee of Mr. Garner when he began selling APLIC's policy. *Savoie v. Fireman's Fund Insurance Co.*, 347 So.2d 188, 191 (La.1977), sets out the criteria for determining the existence of an employment relationship under Louisiana law: selection and engagement of the worker, payment of wages, and power of control and dismissal. A close examination of the employment relationship between Mr. Beauhall and Mr. Garner under these criteria reveals that that relationship was inextricably intertwined with the employment relationship between Mr. Beauhall and SLIC and thus ended when SLIC's relationship with Mr. Beauhall ended around the end of February, 1975. Though Mr. Garner recruited and trained Mr. Beauhall, Mr. Beauhall had no authority to transact business for Mr. Garner until he executed his Agent's Contract with SLIC. All of Mr. Beauhall's commissions as a soliciting agent arose out of his contract with SLIC and were paid by SLIC. His salary and expenses as state and regional manager also came from SLIC. The sole compensation Mr. Beauhall received from Garner came in the form of override commissions that began only after Mr. Beauhall assumed his management position. Finally, although Mr. Garner had some degree of control over Mr. Beauhall's activities, SLIC retained final authority to dismiss Mr. Beauhall's services. The employment relationship between Mr. Beauhall and Mr. Garner was actually inseparable from, and dependent upon, Mr. Beauhall's relationship with SLIC.

At the center of the relationship among the parties, and really the sole purpose for the relationship, was the sale of SLIC's cancer insurance. Thus, when SLIC notified Mr. Beauhall on February 21, 1975 that no new business could be sold by any agent and then sent Mr. Beauhall his paycheck marked "Final Check," no other reasonable inference can be drawn but that the employment relationship with both SLIC and Mr. Garner was at an end. That Mr. Beauhall received no further compensation from Mr. Garner after February 21, 1975 and refused to enter into an Agent's Contract with Great Commonwealth in mid-March reinforces this conclusion. As of February 28, 1975, then, Mr. Beauhall found himself with no services to perform for either SLIC or Mr. Garner, and with no prospect of further income from either of them aside from some renewal commissions he was entitled to receive from SLIC even after his termination.

Since the employment relationship between Mr. Beauhall and Mr. Garner ended when SLIC could no longer write new policies of insurance, plaintiff's only remaining theory of liability is that Mr. Beauhall breached some fiduciary duty that lingered after the termination of the relationship. That some fiduciary duties subsist after termination of an employment relationship is generally recognized both in Louisiana and elsewhere. See *Brown & Root, Inc. v. La-Bauve*, 219 F.Supp. 179 (W.D.La.1962); Restatement (Second) of Agency § 396 (1957). But plaintiff has not cited, nor has this court been able to find, any authority for the general proposition, advanced by plaintiff, that a former employee or agent can not engage in any activity contrary to the interests of his former employer. It is necessary, then, to examine the specific interests Mr. Garner claims were invaded by Mr. Beauhall, as well as the activities Mr. Beauhall engaged in, to determine whether there was some more specific fiduciary duty that Mr. Beauhall breached by selling APLIC insurance to SLIC customers.

■ Mr. Garner claims that he had a right to certain renewal commissions he would have earned if Mr. Beauhall had not sold APLIC's policy to SLIC customers. Whatever the nature of the right Mr. Garner may have had to those unearned commissions,[1] that right arose solely from his contract with SLIC and he certainly cannot erect that right as a bar to prevent other insurers from selling competing insurance to SLIC customers. Yet the facts show that Mr. Beauhall's activities on behalf of APLIC amount to nothing more than that—the sale of a competing insurer's policy to SLIC customers. There is no evidence that Mr. Beauhall made use of SLIC customer lists or confidential information in making his sales. He did use a similar sales strategy and undoubtedly made a point of approaching at least some of his former SLIC contacts, but that sort of activity does not breach any fiduciary duty recognized by Louisiana law. See *Gulf Toy House, Inc. v. Bertrand*, 306 So.2d 361, 366 (La.App. 3rd Cir. 1975); *accord* Restatement (Second) of Agency § 396(b) (1957). Thus the only duty Mr. Beauhall could have breached merely by selling APLIC's policy to SLIC customers was some sort of duty not to compete.

No court in Louisiana has ever recognized the existence of such a fiduciary duty not to compete with a former employer, and this accords with the predominant view in this country. See Restatement (Second) of Agency § 396(a) (1957). In fact, Louisiana, by statute, has declared that even express covenants not to compete, entered into between employers and their employees, are null and unenforceable except in limited circumstances. La.Rev.Stat.Ann. § 23:921 (West 1964). Relying on this statute, Louisiana courts have consistently denied recovery under express covenants not to compete in situations similar to the case at bar where former employees solicited and converted some of the customers of their former employers. *E. g. Gulf Toy House, Inc. v. Bertrand*, 306 So.2d 361 (La.App. 3rd Cir. 1975); *Marine Forwarding & Shipping Co. v. Barone*, 154 So.2d 528 (La.App. 4th Cir. 1963); *Baton Rouge Cigarette Service v. Bloomenstiel*, 88 So.2d 742 (La.App. 1st Cir. 1956). In light of this statutory public policy against express covenants not to compete, this court is unwilling to create a

---

1. Plaintiff attempts to characterize Mr. Garner's interest in unearned commissions as a real right. *See generally* La.Civ.Code art. 476. There is, of course, no specific authority for this proposition, and the authorities offered by way of analogy are somewhat wide of the mark. Article 473 of the Louisiana Civil Code is cited to support the theory that the commissions are incorporeal movables. It is doubtful whether the definition of incorporeal movables found in article 473 embraces commissions at all, but even assuming arguendo that it does, article 473 does not speak to whether rights in incorporeal movables are real or personal. Similarly, plaintiff seeks to analogize the commissions to rents due under a lease agreement in order to bring this case under *Traigle v. AMI, Inc.*, 280 So.2d 858 (La.App. 3rd Cir. 1973). Again, assuming arguendo that the right to receive commissions is analogous to the right to receive rent, *Traigle* is of no help here for that case merely held that the right to receive rental payments is an incorporeal movable right; it did not decide whether such a right is real or personal.

fiduciary duty that amounts to the same thing.

Plaintiff has cited a number of cases finding employees liable for breaches of fiduciary duties to their employers, but all are distinguishable either because the acts upon which liability was based occurred prior to the termination of the employment relationship, or because the duty violated did not amount to a duty not to compete as in this case.

Plaintiff's theory of recovery against Mr. Ralph Edwards and APLIC is that since they hired Mr. Beauhall and had knowledge of his activities, they are responsible for any legal liability those activities incur. Since Mr. Beauhall's activities here complained of do not furnish a basis for liability, that issue need not be reached.

## FINDINGS OF FACT

1. Walt Garner Associates, Inc. is a business corporation chartered under the laws of Oklahoma and has its principal place of business in Oklahoma. This corporation is the successor of an unincorporated association that was headed by Walter H. Garner, a resident of Oklahoma.

2. James Beauhall is a resident of Texas.

3. Ralph B. Edwards is a resident of Mississippi.

4. American Public Life Insurance Company (APLIC) is incorporated under the laws of Mississippi and has its principal place of business in Mississippi.

5. The amount in controversy exceeds $10,000.

6. Standard Life and Accident Insurance Company (SLIC) entered into various agreements with Walter H. Garner authorizing Mr. Garner to act as general agent for the company.

7. SLIC hired Mr. Beauhall in April 1973 and paid him commissions, salaries, and expenses to act, at various times, as a soliciting agent and as a state and regional sales manager on behalf of SLIC.

8. Mr. Garner, acting in his capacity as general agent for SLIC, recruited and trained Mr. Beauhall for his job with SLIC, exercised some amount of control over Mr. Beauhall's activities, and paid a portion of Mr. Beauhall's compensation for his services as state and regional sales manager.

9. SLIC was placed into conservatorship by the District Court of Oklahoma County, Oklahoma on February 3, 1975 and was ordered by the conservator to cease and desist writing any new business on February 21, 1975.

10. On or around February 28, 1975, Mr. Beauhall received a salary check marked "Final Check" from SLIC and was asked to return all company credit cards. Aside from some commissions still owed him by SLIC, Mr. Beauhall received no further compensation—salary or commissions—from either SLIC or Mr. Garner.

11. In mid-March 1975, Mr. Beauhall declined an invitation to sign an Agent's Contract with Great Commonwealth Life Insurance Company, the insurer with which Mr. Garner became associated after the demise of SLIC.

12. After being hired as a soliciting agent by American Public Life Insurance in late March 1975, Mr. Beauhall sold that company's cancer insurance to some individuals that had previously purchased cancer insurance from SLIC. As a result Mr. Garner lost some commissions he would have earned if these individuals had continued to purchase their insurance from SLIC.

## CONCLUSIONS OF LAW

1. Because all parties are of diverse citizenship and the amount in controversy exceeds $10,000, this court has jurisdiction over this matter under 28 U.S.C. § 1332 (1976).

2. In April 1973, Mr. Beauhall entered into an employment relationship with both SLIC and Mr. Garner.

3. On or around February 28, 1975, Mr. Beauhall's employment with both SLIC and Mr. Garner ended.

4. In selling APLIC's cancer insurance to former SLIC customers, Mr. Beauhall breached no fiduciary duties arising out of his former employment with Mr. Garner.

5. Because no liability attaches to Mr. Beauhall's activities, no liability for those activities can be charged against APLIC and Mr. Edwards as his employers.

For the foregoing reasons, judgment is rendered in favor of all defendants and against the plaintiff, rejecting all his claims at his cost.