DOMENGEAUX, Judge.
This is a suit for a declaratory judgment brought by property owners in order to determine their rights and obligations under a contract termed “ATTORNMENT AND NON-DISTURBANCE AGREEMENT.”
Plaintiffs are the owners of twenty acres of land situated in Jennings, Louisiana. On August 12,1976, they entered into a ground lease for 9.5 acres of their property in favor of the Singer Housing Company, d/b/a The Mitchell Company. The lease had a preliminary term of six months, a primary term of twenty-five years, and four successive options to renew for five years each. It also had provisions permitting assignment and subletting of the property, which are set forth as follows:
“12. ASSIGNMENT AND SUBLETTING. Tenant may sublet the premises or any part thereof to such subtenants as Tenant, in its sole discretion, shall determine advantageous; and Tenant shall *521 have the right to assign, mortgage, pledge or otherwise hypothecate all its rights and interest under this lease, but Landlord shall be furnished with true copies of any such assignment, subletting or hypothecation. Tenant shall also have the right to grant easements, licenses and concessions to others for rights of ingress, egress, parking and utilities services. Landlord further agrees with respect to any subtenant, that in the event of any default by Tenant hereunder, such subtenant shall not be disturbed in the possession of their respective premises provided the terms and provisions of their respective leases are complied with.

15. SUBTENANTS. In the event of default by Tenant, as provided in the preceding paragraph, Landlord agrees that all subleases of Tenant’s leasehold interest shall remain in full force and effect for the balance of the term of each such sublease so long as the subtenant thereunder complies with the terms and conditions thereof; however, all rental payments due by all subtenants shall be paid to Landlord during the period of default by Tenant, but no sublease of any of the premises or renewal options shall be for a longer term than the primary term and renewal terms of this lease. Landlord agrees to execute such agreements between Landlord, Tenant and such subtenants as shall be requested to reflect the agreement of Landlord set forth herein.”
On February 7, 1977, the Singer Housing Company entered into a document which assigned the original ground lease between it and the owners, plaintiffs herein, to Mayer Mitchell, Abraham A. Mitchell, W. A. Lubel, and Chester M. Baker, hereinafter referred to as the Mitchell defendants.
On February 16, 1977, the Mitchell defendants entered into a sublease arrangement with the Billy M. Corporation for a portion of the land leased from plaintiffs. The following relevant provisions are found in the sublease:
“Lessor [Mitchell defendants] agrees that upon Lessee’s [Billy M. Corporation’s] request a non-disturbance and at-tornment agreement will be executed granting Lessee non-disturbance of its right of possession in and use of the premises so long as Lessee is not in default under the terms of this lease.

COMPETITIVE USE
The Lessor hereby agrees that it shall not, except with the written consent of the Lessee first had and obtained, directly or indirectly engage in, or acquire any beneficial interest in, or grant a Lease to any persons to engage in a hamburger oriented self-service restaurant of a type operated by Lessee in which food and beverages are dispensed within a radius of 4,000 feet of the Premises. If Lessor is a corporation, the foregoing restrictions and limitations shall apply to all activities of all officers, directors, subsidiaries and affiliates of Lessor during the term of this Lease, and any extension thereof. The restriction of use or other property of the Lessor within the vicinity of the Premises is part of the consideration for which the Lessee has agreed to enter into this Lease.

On March 8, 1977, a document captioned “ATTORNMENT AND NON-DISTURBANCE AGREEMENT” was executed between plaintiffs, the Mitchell defendants, and the Billy M. Corporation. The agreement provided, in part, as follows:
“WITNESSETH:
WHEREAS, OWNER, by lease dated August 12, 1976, and by Assignment of Lease dated December 23, 1976 between Singer Housing Company d/b/a The Mitchell Company and LESSEE, did, as LESSOR, lease and demise unto LESSEE certain property, . . ., upon the covenants and conditions set forth therein, and
WHEREAS, OWNER is the owner in fee of the said property, together with *522 the interest of LESSOR in the ground lease, and has full authority to execute and deliver this agreement, and
WHEREAS, the ground lease has been at all times since its execution date and now is in full force and effect, and no default has occurred in the performance of any covenant of LESSEE thereunder, and
WHEREAS, there has been executed and delivered between LESSEE, as Landlord, and TENANT, as Tenant, a lease, hereinafter called ‘sublease’, dated February 16, 1977, of certain premises to be located in a proposed shopping center development, said shopping center property consisting of a portion of said parcel of land demised to LESSEE under the said ground lease ., which sublease is for a term of twenty (20) years, together with certain extension options, as particularly described in said sublease, and

WHEREAS, OWNER is willing to consent to the sublease, and to approve the terms, covenants and conditions thereof, and OWNER and TENANT are willing to agree that the sublease shall remain in effect in the event of the termination of the ground lease.

NOW, THEREFORE, in consideration of the premises, the parties hereto mutually covenant and agree as follows:
1. OWNER consents to the execution and delivery of the sublease by and between LESSEE and TENANT.
2. OWNER and LESSEE agree that no act which LESSEE or TENANT is required or permitted to do under the terms of the sublease shall constitute a default under the ground lease or under any mortgage (which term shall include all security instruments) now or heretofore or hereafter constituting a lien upon the premises described in the ground lease.
3. LESSEE and TENANT agree with OWNER that they will perform and comply with all terms, covenants and conditions of the sublease which are binding upon them respectively.
4. OWNER and LESSEE agree not to interfere- with or disturb the right of possession of TENANT in and to the portion of the Premises demised by the sublease and the sublease shall remain in full force and effect in accordance with its tenor, and the sublease shall remain in full force and effect for the term and any renewal terms therein set forth; provided, however, TENANT shall not then be in default under the sublease beyond any period permitted therein to cure the default.
5. In the event that the ground lease shall at any time, after the commencement of the sublease and prior to the expiration, cancellation or other termination of the sublease, be terminated by reason of default, bankruptcy, insolvency, receivership or for any reason whatsoever, OWNER and TENANT agree that the sublease shall, in accordance with its terms, remain in full force and effect as a direct lease between OWNER, as Landlord, and TENANT, as Tenant, whereupon this agreement shall be null and void. . . . ” [Italics added]
At some date after execution of this agreement, the Billy M. Corporation informed plaintiffs, the owners, that the restriction against leasing property for the operation of a self-service hamburger restaurant within a 4,000 foot radius, found in the sublease between the Mitchell defendants and the Billy M. Corporation, was binding on plaintiffs as to their other un-leased lands by virtue of the italicized language found in the attornment and non-disturbance agreement. Plaintiffs filed this suit against the Mitchell defendants and the Billy M. Corporation on October 27, 1977, seeking a declaratory judgment in order to ascertain whether they were so prohibited.
After trial on the merits, the trial judge determined that plaintiffs were not bound by the provisions of the sublease until such time as the Mitchell defendants would default on their lease. The Billy M. Corporation appeals.[1] We affirm.
*523 Four contracts were introduced into evidence: the original ground lease, the assignment, the sublease, and the attornment and non-disturbance agreement. At the outset, we note that the trial judge found these contracts to be non-ambiguous and would not permit the use of parol evidence in their construction. Nevertheless, parol evidence was offered under a proffer, and plaintiffs maintain that it should be considered by us on appeal.
It is unnecessary for us to consider this evidence because we feel, as did the trial judge, that the intent of the parties and the effect of the contracts can be determined from their face.
We hold that the attornment and non-disturbance agreement does not bind plaintiffs to the provisions of the sublease, until such time as the original lease existing between them and the Mitchell defendants collapses.
We begin our resolution of the controversy by looking to the title of the document itself. “Attornment” is a common law term. It refers to a situation where there is a change in a lessor. The effect is a continuation of an existing lease, i. e. the lessee holds the property from his new lessor under the same conditions as with his former lessor. The new lessor steps into the shoes of the old lessor, vis-a-vis the lessee. See 51C C.J.S. Landlord and Tenant § 22 (1968).
The document under consideration is captioned “ATTORNMENT AND NON-DISTURBANCE AGREEMENT.” One would assume from this that the purpose of the document is to provide that the subles-see, Billy M. Corporation, will continue to lease the property from plaintiffs, in the event that the Mitchell defendants would default in their lease and no longer have the right to sublease the property. One would assume also, from the inclusion of “non-disturbance,” that the owners, plaintiffs herein, will not disturb the Billy M. Corporation in its possession under the sublease.
We now look to the specific provisions of the agreement. The instrument sets forth a series of premises, prefaced by “Whereas,” which clearly set forth the actual intent of the parties and the purpose of the document. The most significant one of these states:
“WHEREAS, OWNER is willing to consent to the sublease, and to approve the terms, covenants and conditions thereof, and OWNER and TENANT are willing to agree that the sublease shall remain in effect in the event of the termination of the ground lease.”
We feel that this means just what it says. First, the owners intend to consent to the sublease. However, it should be noted that the owners are not consenting to the sublease as lessors, but as the owners of the property. That is, the owners are obviously approving the sublease as not being repugnant to them, nor repugnant to any of the provisions of the lease existing between them and their lessee, the Mitchell defendants. Second, it also indicates that the owners recognize the power of their lessee to grant a sublease. Finally, it shows that the owners intend to honor the sublease, in the event of a default or termination of the original ground lease.
There then follows the specific obligations of the contract, previously quoted, which enacts this intention. The first paragraph provides that the owners consent to the execution and delivery of the sublease between the lessee and the tenant, i. e. the right of the lessee to sublease is specifically recognized. The second paragraph provides that no act required or permitted under the sublease existing between the lessee and the tenant will constitute a default under the lease existing between the owners and the lessee.
The third provision of the agreement is at the core of this dispute. It provides:
“3. LESSEE and TENANT agree with OWNER that they will perform and comply with all terms, covenants and conditions of the sublease which are binding upon them respectively.”
The question is whether this language can be construed to mean that the owners, plaintiffs herein, agreed to be bound by all *524 the terms, covenants, and conditions of the sublease, including the non-competition clause, from the moment the agreement was executed. As previously indicated, we think not.
The language in paragraph 3 seems to correspond with the language found in paragraphs 12 and 15 of the original lease existing between plaintiffs and their original lessee. Paragraph 12 provides, in part:
“Landlord [owners] further agrees with respect to any subtenant, that in the event of any default by Tenant [Mitchell defendants] hereunder, such subtenant shall not be disturbed in the possession of their respective premises provided the terms and provisions of their respective leases are complied with." [Italics added] Paragraph 15 provides, in part:
“In the event of default by Tenant [Mitchell defendants], as provided in the preceding paragraph, Landlord [owners] agrees that all subleases of Tenant’s leasehold interest shall remain in full force and effect for the balance of the term of each such sublease so long as the subtenant thereunder complies with the terms and conditions thereof; . . .
[Italics added]
When the italicized language of Paragraphs 12 and 15 of the original lease is compared with Paragraph 3 of the attornment and non-disturbance agreement, it is quite clear that all the plaintiffs intended to obligate themselves to do was to honor the sublease in the event of default by the sublessors on the original lease, as long as the sublease arrangement between the sub-lessor and the sublessee was not breached.
In addition, if we were to find that Paragraph 3 bound plaintiff to the conditions of the sublease from the moment of the execution of the attornment and non-disturbance agreement, we would have to find that the pronouns “they” and “them” in Paragraph 3, refers to the nouns “lessee,” “tenant,” and “owner.” We feel that common usage dictates that “they” and “them,” as used in the sentence construction of Paragraph 3, refers only to “lessee” and “tenant,” and not to “owner.”
Moreover, Paragraph 3 would make no sense if the pronouns “they” and “them” were construed to refer to the “lessee,” “tenant,” and “owners” because of the phrase “terms, covenants and conditions of the sublease which are binding upon them respectively.” At the time the document was executed, the terms, covenants, and conditions of the sublease were not binding on the owners because they were not a party to the sublease. In order to make sense, the owners would have had to be bound by the sublease when this language was agreed to.
In summary, when all the verbosity is stripped away from the attornment and non-disturbance agreement, there remains simply an obligation of the owner to step into the shoes of the lessee, vis-a-vis the sublessee, in the event that the lease between the owner and the lessee falls. If and when this occurs, the conditions of the sublease then become binding upon the owner.
Stated differently, the attornment and non-disturbance agreement is an obligation contracted on a suspensive condition, as described by Article 2043 of the Louisiana Civil Code.[2] It depends upon a future and uncertain event, viz. the dissolution of the lease existing between the owners, plaintiffs herein, and their lessee, the Mitchell defendants.
Since there has been no default or termination of the lease existing between the owners and their lessee, the sublessor, the suspensive condition has not been realized. We conclude, therefore, that the owners are bound only by the conditions contained in *525 the lease existing between them and their lessees, the Mitchell defendants, and not by the conditions contained in the sublease existing between the Mitchell defendants and their sublessee, the Billy M. Corporation.
For the above reasons, the judgment of the District Court is affirmed at appellants’ costs.

AFFIRMED.

. The Mitchell defendants did not appeal.

. Article 2043 provides:
“The obligation contracted on a suspensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.”