SWIFT, Judge.
The defendant has appealed a decision of the trial court awarding the plaintiffs damages allegedly sustained from defendant’s threat to seek an injunction to prevent a competitor from constructing a building on property the latter leased from the plaintiffs.
The plaintiffs (Fontenot Heirs) are owners of a certain 20-acre tract of land in Jennings, Louisiana. On August 12, 1976, they entered into a ground lease of 9.5 acres thereof, the lessee being the Singer Housing Company (Singer), doing business as the Mitchell Company, a developer. The lease provided, inter alia, that the lessee could sublease the land and if the sublessor defaulted the sublessee could maintain the lease by complying with its terms and paying the rent to the lessors, the landowners.
This lease was assigned on January 31, 1977, to Mayer Mitchell, et al. (Mitchell), who on February 16,1977, subleased to the Billy M Corporation (Billy M) a small portion of the leased property. The sublease provided that Mitchell would not grant a lease to any other person engaged in the hamburger fast food restaurant business within a radius of 4000 feet of the premises except with the consent of Billy M. The latter is engaged in this type of business.
On March 8, 1977, the plaintiff landowners, Mitchell and Billy M executed an instrument styled an “ATTORNMENT AND NON-DISTURBANCE AGREEMENT.” It provided that the plaintiffs consented to and approved the sublease of February 16, 1977, and that:
*952 “3. LESSEE and TENANT agree with OWNER that they will perform and comply with all terms, covenants and conditions of the sublease which are binding upon them respectively.”
On March 30, 1977, the Fontenot Heirs leased to the McDonald’s Corporation (McDonald’s), a fast food hamburger chain, a small tract in that part of its twenty-acres not included in the 1976 lease to Singer that was assigned to Mitchell but within a radius of 4000 feet of the tract subleased by Billy M. This lease stipulated a primary term of twenty years and rentals during such period of $188,500.00. Title was warranted and the lease further provided that the lessee would timely apply for title insurance. If any defects in title were found the lessor had 60 days to cure same. If the defects were not so cured the lessee, at its option, could terminate the lease and all rentals theretofore paid would be returned.
On April 27,1977, an attorney for Billy M wrote a letter to plaintiffs stating that in the March 8, 1977, instrument they had consented to Billy M’s sublease and agreed to be bound by its terms, one of which prohibited leasing to a competitor. The letter further stated:
“It has come to our attention that you and others have negotiated with McDonald’s to open one of its restaurants within 1,200 feet of the Burger Chef premises. I consider this to be a direct violation of the agreements that have been reached and I have advised my client that it is entitled to injunctive relief to prevent the construction of a McDonald’s restaurant at the site contemplated. Please be advised accordingly and let me know the intentions of the landowners under these circumstances.”
The plaintiffs’ counsel replied on May 4, 1977, saying in part:
“On March 8, 1977, the owners did execute an Attornment Agreement with the ground lessee and Billy M. Corporation, wherein it was recited that the owners are ‘... willing to consent to the sublease, and to approve the terms, covenants and conditions thereof, ... ’. This provision does not bind the owners on lands owned by them, not covered under the Ground Lease.
“In addition, the agreement provided that the sublease would become a lease between owners and tenant only in the event of termination of the Ground Lease.
“The owners have completed negotiations with McDonald’s on property not covered under the Ground Lease. However, the threat of litigation by your client has placed the completion of the McDonald lease in jeopardy. Therefore, your client is requested to withdraw the threat of litigation within five (5) days from your receipt of this letter.
“If the threat of litigation is not withdrawn and the owners do not consummate the lease with McDonald’s because of the threat, then the owners will have no alternative but to institute suit against your client for the loss of profits from the McDonald lease in the amount of $188,500.00.”
In a subsequent letter the time for filing suit was extended. On May 31, 1977, counsel for defendant replied stating that as the lease with McDonald’s had been executed:
“We have no choice but to inform you that a suit for injunctive relief to prohibit the construction of a McDonald’s restaurant at the site contemplated will be filed just as soon as the pleadings can be prepared.”
When the Pioneer Title Insurance Company was informed of this correspondence it declined to issue a title policy because of the threat of litigation. On June 30, 1977, McDonald’s terminated the lease. Billy M did not institute a suit for such injunctive relief, but the threat of litigation was never withdrawn.
On October 27, 1977, the Fontenot Heirs filed a petition for a declaratory judgment against Billy M et al. to ascertain whether or not the attornment and non-disturbance agreement prohibited plaintiffs from leasing the remainder of their property to a competitor of Billy M. It was held therein that plaintiffs were not bound to the provi *953 sions of the sublease until such time as Mitchell should default on their original lease. Cassidy v. Billy M Corp., 365 So.2d 520 (La.App. 3 Cir. 1978).
On April 25, 1978, the Fontenot Heirs filed the instant suit. The petition generally set forth the facts hereinabove mentioned and also:
“That the loss of the McDonald’s lease was solely and proximately caused by the fault of the defendant, Billy M Corporation, in the following non-exclusive particulars:
“1. In wilfully and knowingly threatening litigation to enjoin the construction of a McDonald’s Restaurant on the leased premises when it had no right to so do.
“2. In misinterpreting the affect (sic) of an Attornment and Nondisturbance Agreement and in threatening to enjoin the construction of a McDonald’s Restaurant on the leased premises based on this misinterpretation.
“3. In threatening litigation when it had no contractual basis to so do.
“4. In refusing to withdraw the threat of litigation upon request and demand by petitioners after being informed of the possible consequences of the threat of litigation.
“10.
“Petitioners itemize their damages as follows:
“1. Rent due under the terms of the lease with McDonald’s Corporation. $188,500.00
“2. Future loss of revenue in the form of tenants with regard to the North 680' of the tract of land described in paragraph one (1) of this petition because of the loss of McDonald’s Corporation as a tenant. 8500.000.00
“TOTAL $688,500.00”
In a supplemental and amending petition violations by defendant of the Louisiana Unfair Trade Practices and Consumer Protection Laws were alleged and the plaintiffs prayed for an additional $150,000.00 as attorneys fees.
The trial judge awarded the plaintiff $188,500.00 as the loss of rentals under the lease terminated by McDonald’s, basing his decision on that part of Article 2315 of the Louisiana Civil Code providing: “Every act whatever of men that causes damage to another obliges him by whose fault it happened to repair it.” He rejected the demand for attorney’s fees concluding that the defendant had not used an act or practice declared unlawful by R.S. 51:1405. We reverse the damage award.
Article 2315 obviously does not impose liability for all acts of parties, but only those which are caused through fault. Generally, this includes damages caused by the wilful harming of another or the negligent harming of another. Stone, Louisiana Tort Doctrine, §§ 59, 81. Strict liability results without fault under certain facts, none of which are present here.
In this instance it is clear from the deposition of William H. Michot, the president and sole stockholder of Billy M, that he believed the attornment agreement prohibited the Fontenot Heirs from leasing to a competitor any of their land within 4,000 feet of Billy M’s subleased premises and also that he relied on his attorney’s advice in this respect. Consequently, it cannot be said that Mr. Michot wilfully intended harm to the plaintiffs when he threatened to sue to protect what he considered to be a legal right of his company.
Nor do we think it has been established that the Fontenot Heirs were negligently harmed by Michot’s actions. He believed that his company was protected by the disputed provision of the attornment instrument and sought and relied on his attorney’s opinion in this respect. Neither was in bad faith. The issue had not been previously litigated and it matters not that it was subsequently decided in a declaratory judgment action instituted by plaintiffs *954 that they were not bound by the conditions contained in the sublease until there was a default or termination of the original lease.
We do not find any authorization in Louisiana for a recovery of damages under these particular circumstances. In our opinion justice dictates that we see to it that our citizens have free and unhindered access to the courts to resolve their differences and disputes when in good faith.
In his treatise, The Law of Torts, 4th Ed., §§ 129, 944, Professor William L. Prosser mentions a privilege to interfere with contractual relations of another and says:
“Where the defendant acts to further his own advantage, other distinctions have been made. If he has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it; and for obvious reasons of policy he is likewise privileged to assert an honest claim, or bring or threaten a suit in good faith, to exercise the right of petition to public authorities, or to settle his own case out of court. (Emphasis added.)
“But where his interest is merely one of prospective advantage, not yet realized, he has no such privilege. * * * ”
The defendant in the present case definitely had an existing economic interest to protect. And it must be remembered too that inducing breach of contract without use of fraudulent or malicious means is not actionable in this state.
Plaintiffs-appellees contend that the companion cases of Reynolds v. Egan, 123 La. 294, 48 So. 940 (La.1909) and Egan v. Hotel Grünewald Company, 129 La. 163, 55 So. 750 (La.1911), are applicable. In these cases Hotel Grünewald undertook certain construction on its property and as a result of the excavation and pile driving the adjacent property of Egan became uninhabitable and unleaseable. Reynolds, the tenant, sued landlord Egan and obtained a judgment cancelling the lease. Egan then sued Hotel Grünewald for the loss of the rentals caused by the actions of the hotel’s contractor. The supreme court entered a judgment of non-suit because of the lack of testimony as to the amount of rent lost. However, it said that the claim for loss of rent was “well-founded.” The court obviously found that the acts of the hotel’s contractor were trespasses and tortious.
The same is true of the conduct of defendant in the case of Sandlin v. Coyle, 143 La. 121, 78 So. 261 (La.1918), wherein the defendants were held liable under Article 2316 of the Louisiana Civil Code for frightening away the plaintiff's tenant and causing a loss of rent. The defendants went on the plaintiff’s property to whip the tenant, a black man, for failing to pay a debt owed one of them. The tenant fled for safety and as a result the plaintiff lost his rentals. The court said:
“In this state laws have been passed and courts have been established that individual disputes might be settled without resorting to violence and when defendants violated the law, invaded plaintiff’s property, unlawfully sought to injure plaintiff’s tenants, drove him off the place, and damaged plaintiff, they must repair the damage.”
Thus, it is clear that the acts of defendants were unlawful and tortious.
Sandlin was cited in Carson v. Stephens, 14 La.App. 272, 129 So. 381 (2 Cir. 1930), in which damages were allowed when the plaintiff was advised by one Gladney not to proceed with their building contract. The court said the record did not show any direct threat of violence or a request to discontinue the work, but “Gladney was made to understand he would not be permitted to use the building after the completion ... . ” (Emphasis added.)
In Martin v. Sterkx, 146 La. 489, 83 So. 776 (La.1920), the defendant entered plaintiff’s property and told plaintiff’s tenant that she would have to vacate the premises because there was a law suit pending involving the title to the property. The supreme court was convinced that the actions *955 of the defendant were “officious and mischievous.” Further, it was not the defendant who had a claim to ownership of the property, but rather it was defendant’s aunt. The aunt’s testimony was to the effect that she did not know she had authorized any suit against the plaintiff.
In New Iberia Extract Company v. E. McIlhenny’s Son, 132 La. 149, 61 So. 131 (La.1912), the defendants mailed circular letters to plaintiff’s customers threatening institution of legal proceedings against the customers if they offered for sale under the name “Tabasco” a pepper sauce manufactured by anyone other than E. Mcllhenny’s Son. The defendants patented the process for manufacturing the sauce in 1870, but this expired in 1887. In 1905 they registered the trade-mark “Tabasco” under a false declaration that they had had exclusive use thereof since 1868. This statement was made on advice of counsel, but the defendants knew it was untrue. The trademark was subsequently cancelled for another reason by the Commissioner of Patents, but in the meantime the circulars had been mailed. As a result, some recipients of the letter ceased doing business with plaintiff. The court held the circulars constituted libel and allowed plaintiff to recover damages for the injuries to its business. It rejected the defense that defendants had relied on the advice of counsel in making the false declaration to the commissioner saying:
“No amount of legal advice will excuse a suppression, or misrepresentation, of the facts of a case. The client is responsible for the truth of facts by him verified, and advice of counsel will not shield him from statements that are not true.”
The court concluded that “defendants acted in bad faith with intent to drive plaintiff and other competitors from the market.” (Emphasis added.)
In these cases the acts of the parties causing plaintiffs’ losses were done in bad faith or were seemingly unlawful or wrongful. Such actions certainly cannot be likened to a threat to institute a suit by a party who honestly believes he has such a right to protect his business and acts on the advice of his attorney.
The plaintiffs-appellees cite Reichert v. Continental Insurance Company, 290 So.2d 730 (La.App. 1 Cir. 1974), writ denied, 294 So.2d 545 (La.1974), for the broad proposition that the law imposes certain risks upon parties to contracts who misinterpret their rights and cause damage to others. We do not feel that the Reichert rationale, which involved an erroneous interpretation by an insurer of its own policy, is applicable to the case at bar. First, it was not shown in this case who prepared the attornment agreement. Consequently, that document cannot be considered in the same category as an insurance company’s “own policy.” Furthermore, it is not the insurer’s misinterpretation of its policy above that gives rise to a cause of action for penalties and an attorney’s fee. That cause of action was created by the penalty statute where there has been an arbitrary refusal to pay the benefits due under the policy. Also, insurance contracts are considered sui generis and are treated differently from other contracts in many respects.
Mid-State Homes, Inc. v. Bice, 361 So.2d 275 (La.App. 1 Cir. 1978) and T & D Contracting Company v. Mack Truck, Inc., 178 So.2d 284 (La.App. 4 Cir. 1965), writ refused, 248 La. 441, 179 So.2d 430 (La.1965), are cited as authority for plaintiffs’ argument that damages should be awarded against a party who misinterprets a contract and files suit in good faith. Both cases involved claims for damages resulting from wrongful seizures of mortgaged property under executory process. We are unable to find in either opinion any mention of a misinterpretation of a contract by a party. Be that as it may, wrongful seizure of property without prior notice in an ex parte proceeding is a harsh remedy. And it is to prevent such wrongful seizures that recovery of damages is allowed. We see no similarity between a wrongful seizure in a defective executory process proceeding and the mere threat of litigation.
Finally, plaintiffs assert that the standard to be applied here is the same as that involved where a wrongful temporary re *956 straining order or injunction was actually issued. Article 3608 of our Code of Civil Procedure specifically provides for an award of damages simply because of the wrongful issuance of a temporary restraining order or preliminary injunction. We do not believe the legislature intended that this article apply to a mere threat to obtain such injunctive relief.
In this case for legitimate business purposes, believing it had the right to prevent the original lessors from granting a similar lease to a business competitor and following the advice of its attorney, Billy M Corporation threatened to institute suit to obtain injunctive relief. Then, because of the declaratory judgment suit filed against it by the lessors involving that issue or for some other reason (not shown to have been in bad faith or wrongful), Billy M saw fit not to pursue such course of action. While we recognize that this threat of litigation did cause McDonald’s to exercise its option under the contract to avoid the lease, we are not willing to hold that such a threat without bad faith or other wrongful conduct is sufficient to impose liability for any damages which may result therefrom.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it awards damages to plaintiffs and taxes the court costs to the defendant. Otherwise, it is affirmed. The plaintiff will pay all costs of court, including this appeal.
REVERSED IN PART AND AFFIRMED IN PART.